1   Jen-Feng Lee, SBN 204328 (jflee@ltpacificlaw.com)
2   Kenneth K. Tanji, Jr., SBN 162273 (ktanji@ltpacificlaw.com)
    LT PACIFIC LAW GROUP, LLP
3   17800 Castleton Street, #560
    City of Industry, CA 91748
4   T: 626-810-7200
5   F: 626-810-7300

6
    Robert Aycock (Admitted Pro Hac Vice) (raycock@padrm.com)
7   Joseph G. Pia (Admitted Pro Hac Vice) (joe.pia@padrm.com)
8   PIA ANDERSON DORIUS REYNARD & MOSS
    136 South Temple, Suite 1900
9   Salt Lake City, UT 84111
10  Telephone:  (801) 350-9000
    Facsimile:    (801) 350-9010
11

12  Attorneys for Defendants
13  UNICLASS TECHNOLOGY CO. LTD., ET AL

14
                 **UNITED STATES DISTRICT COURT**
15
                 **CENTRAL DISTRICT OF CALIFORNIA**
16

17  ATEN TECHNOLOGY, CO. LTD.          No.  2:15-cv-04424-BRO-AJW

18                Plaintiff,            **DEFENDANTS' REPLY IN**
19                                      **SUPPORT OF ITS OPENING**
                                        **CLAIM CONSTRUCTION BRIEF**
20      vs.                             **FOR THE '112 PATENT**

21  UNICLASS TECHNOLOGY CO.,
22  LTD., et al.
                                        Date: April 12, 2016
23                Defendants.           Time: 9:00 a.m.
24                                      Judge: Hon. Andrew J. Guilford
25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT........................................................................................................2

      A.  "body" ........................................................................................................2

            1.   Aten's argument that it did not disclaim a box shape is of no
                 consequence.......................................................................................2

            2.   The '112's disclaimer is not limited to prior art switches with
                 unfixed cables.....................................................................................4

            3.   The applicant's silence to the examiner's identification of "body"
                 in the prior art does not support Aten's attempts to recapture
                 disclaimed scope.................................................................................6

      B.  "enclosing switching circuit with the body" ............................................8

      C.  "surface of the body".................................................................................10

III.  CONCLUSION...................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Aten Int'l Co. Ltd., et al. v. Emine Tech Co., Ltd, et al.*,
CV No. SACV 09-0943 (CDCA) ...............................................................................7

*Cybor Corp. v. FAS Techs., Inc.*,
138 F.3d 1448 (Fed. Cir. 1998) .................................................................................7

*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*,
114 F.3d 1547 (Fed. Cir. 1997) .................................................................................7

*Ekchian v. Home Depot, Inc.*,
104 F.3d 1299 (Fed. Cir. 1997) .................................................................................1

*Hill-Rom Servs. v. Stryker*,
755 F.3d 1367 (Fed. Cir. 2014) .................................................................................2

*PC Connector v. SmartDisk*,
406 F.3d 1359 (Fed. Cir. 2005) .................................................................................2

*Salazar v. Procter & Gamble Co.*,
414 F.3d 1342 (Fed. Cir. 2005) .................................................................................7

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
242 F.3d 1337 (Fed. Cir. 2001) .................................................................................7

*Southwall Techs., Inc. v. Cardinal IG, Co.*,
54 F.3d 1570 (Fed. Cir. 1995) ..................................................................................2

*Springs Window Fashions, LP v. Novo Industries, LP*,
323 F.3d 989 (Fed. Cir. 2003) ..................................................................................1

*Thorner v. Sony Computer Entertainment Am., LLC*,
669 F.3d 1362 (Fed. Cir. 2012) .................................................................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.      INTRODUCTION**

Aten's current claim construction tactics have taken a long and circuitous path since the time this Court entered its claim construction order in the *Emine* litigation, and then vacated it after the parties settled.  Aten followed the dismissal of the *Emine* litigation by filing this case in the E.D. of Texas in an effort to receive a more favorable construction.  Now that the case has returned to this Court who is quite familiar with the technology and the disputed terms, Aten could have accepted Uniclass's request for a stipulation adopting the Court's prior construction to save the parties and the Court needless time and resources rehashing old arguments.  An adoption of the Court's prior construction would definitively establish that the accused Uniclass products could not be subject to any royalties under the parties' prior agreement because they are not covered by the claims of the '112 Patent. The agreement itself has an express exception to the payment of royalties if the products do not fall within the claims.

Based on the Court's prior analysis of the '112 Patent that Aten avoided prior art by disavowing box-style switches with "<u>outer walls that are made of</u> metal material or <u>rigid plastic material</u> and <u>assembled together by means of</u> <u>screws</u>," it is left with few arguments.  The position Aten now takes is that any "[d]isclaimer is only for switches with un-fixed cables."  Aten's argument is little more than another end-around to avoid its previous failed efforts before the ITC and this Court to recapture surrendered claim scope.  It is the "public notice function of a patent and its prosecution history" that "requires that a patentee be held to what he declares during the prosecution of his patent." *Springs Window Fashions, LP v. Novo Industries, LP*, 323 F.3d 989, 995 (Fed. Cir. 2003). "[S]ince, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection." *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997). The asserted claims simply "may not be construed one way in order to obtain

1    their allowance and in a different way against accused infringers." *Southwall*

2    *Techs., Inc. v. Cardinal IG, Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). If Aten's

3    arguments are accepted, the claims at issue will encompass the prior art,

4    rendering the '112 Patent invalid.

5    **II.    ARGUMENT**

6          **A.    "body"**

7          The Court's previous construction of the term "body" is just as valid today

8    as it was at the time of issuing the order in the *Emine* litigation.  *See PC*

9    *Connector v. SmartDisk*, 406 F.3d 1359, 1361 (Fed. Cir. 2005) (holding that a

10   claim term cannot have different meanings at different times; its meaning must

11   be interpreted at the time of its effective filing date); *Hill-Rom Servs. v. Stryker*,

12   755 F.3d 1367, 1385 (Fed. Cir. 2014) (holding that the literal scope of a claim is

13   fixed by the meaning of its terms in the relevant art as of the effective filing date

14   of the application). On the other hand, Aten has changed its own construction of

15   "body" from the *Emine* litigation. In *Emine*, Aten argued that "body" means: "an

16   enclosure having one or more connector port openings and an internal switching

17   circuit." *Emine* litigation, Dkt. No. 274 at 6.  Today, Aten posits that "body"

18   does not have any special meaning in the relevant field. Aten Br. at 10. This

19   waffling on a key term in the case is further evidence that Aten's arguments

20   should be rejected in favor of the Court's construction.

21          **1.    <u>Aten's argument that it did not disclaim a box shape is of</u>**

22          **<u>no consequence</u>.**

23          Aten first argues that the Court's construction of "body" and Defendants'

24   re-iteration of that construction should be rejected in favor of a generalized and

25   overly broad reading of the term.  In particular, Aten argues that the specification

26   does not suggest that "the boxy exterior of conventional switches is what

27   frustrates the goals of the patent." Aten Br., 9.  Aten further states that the goal of

28   the '112 Patent, is simply "to protect the circuits in the ***interior*** of the body"

1   "from the elements and from sudden movement." Consequently Aten asserts that

2   the body can be of any shape and is not affected by the "shape or rigidity of the

3   *exterior* of the switch body." Aten Br. at 8 (emphasis in original).

4          Aten's argument misses the mark because the Court's prior construction,

5   now proffered by Defendants, says nothing about the shape of the body:

6
7          An enclosure containing a switching circuit, but does not include
           outer walls that are made of metal material or rigid plastic material
8          and assembled together by means of screws.

9
10  Shape of the body is absent from, and irrelevant to the Court's construction. The

11  focal point of the construction is that the '112 Patent disclaims switches made of

12  metal or rigid plastic material and assembled together with screws.  In some

13  instances that disclaimer could include prior art box shape switches, but it also

14  could include other shaped switches that are rigid and assembled with screws.

15  Consequently, any shaped switch that contains the additional limitations is

    excluded from the term "body" as used in the patent.

16         Aten's argument that "[t]he specification identifies two problems with

17  prior art switches [which are falling and exposure to moisture], and neither is

18  caused by a boxy, rigid exterior" again misses the mark.  Aten slips into its

19  "boxy shape" argument the term "rigid" which was expressly disavowed because

20  rigid outer walls of prior art switches had the identified problems. As discussed

21  below in the construction of "enclosing switching circuit with the body" those

22  two problems are solved by the patent without reference to shape, instead the

23  "present invention" achieves protection by "three times of injection molding to

24  include a circuit-protecting layer 21 for enclosing the circuit board 24  provided

25  in the main body 20, an outer case 22 enclosing the circuit-protecting layer 21,

26  and an anti-slipping layer 23 coating the outer surface of the outer case 22." '112

27  Patent 2:28-36.

28

The '112 Patent specification clearly acknowledges and criticizes the prior art configuration of a switch with a "body" having outer walls made out of rigid plastic or metal material and assembled together by screws because such a configuration cannot achieve the claimed invention's purpose of providing "absolute protection of an internal circuit board." According to the inventor, rigid materials assembled with screws are subject to damage from falls and allowing in moisture "when a high humidity exists." '112 Patent 1:23-32.

Aten makes the argument that because "the patent gives no reason why the box shape, held together by screws, could not be made airtight to keep out the external moisture" that it did not surrender this claim scope. Dkt. No. 194 at 12. This argument again is misdirection. Had the inventor intended to cover a switch made of metal or rigid plastic material and assembled with screws that also achieved the claimed purpose of the '112 Patent, to protect the interior of the switch from the elements and sudden movements, he could have done so. *See* Aten Br. 9.  However, he chose to distinguish his invention from a switch that has those characteristics to overcome the prior art. Because the '112 Patent did not disclose or claim a switch having "outer walls that are made of metal or rigid plastic material and assembled together by means of screws" that could be made to protect the enclosed circuit (but rather disclosed that such a configuration couldn't), it disavowed Aten's expanded scope.

### 2. <u>The '112's disclaimer is not limited to prior art switches with unfixed cables.</u>

Aten now argues that its disavowal does not extend to every "body having a boxy shape and rigid walls," but instead only to rigid bodies that also have unfixed cables.  In other words, as long as a box has fixed cables, even if it is made of a rigid material and screwed together, it is covered by the term "body." Aten's argument fails for a number of reasons.  The prior art it distinguished during prosecution clearly shows cables that are fixed. For example, U.S. Patent

---

4

Application No. 20010023141 to Cheng-Chun Chang ("Chang") was cited by the examiner as prior art to the '112 Patent.




Chang, Figs. 1-2. Chang includes a "relay box 1 and a signal cable assembly 2," and "a circuit board 13 mounted in the relay box." Chang at [0011-0012]. Throughout prosecution, the examiner found that Chang disclosed a switch having a cable "fixedly attached to the body." The fixed attachment of the cable in Chang is similar, if not exactly the same, as Defendants' accused products.

A comparison of the products Aten contends infringe the claims of the '112 Patent today with the prior art box style switches it argued around during prosecution exposes the error of Aten's argument. Aten's proposed PAOM of "body" would encompass products that are not designed or configured to achieve the intent and purpose of the '112 Patent. '112 Patent 1:5-10.

**Example Uniclass Accused Products**




**Front View**                                    **Back View**

**Disassembled View**



As seen in these pictures, the accused devices include the exact features of the box style prior art that the '112 Patent distinguished: "<u>outer walls that are made of</u> metal material or <u>rigid plastic material</u> and <u>assembled together by means of screws</u>." '112 Patent 1:23-25 (emphasis added).

Whether or not the cables are fixedly attached to the body (as opposed to removable) is irrelevant to the construction of the term "body." The term "body" is not concerned with other requirements of the terms such as "fixedly attached." Claim 1, limitation 3 ("a plurality of cables fixedly attached to and extending from the body . . ."); Claim 12 ("The switch of claim 1, wherein the plurality of cables are fixedly attached to the body . . ."). Rather, "body" is concerned with the type and manner of encasement. '112 Patent 1:5-10.

Even if Aten is right that its invention requires fixedly attached cables as some of the dependent claims recite, that argument does nothing to lessen its disavowal of prior art enclosures that are made of rigid material and screwed together. As such, the Court's prior construction should stand.

> **3.** **The applicant's silence to the examiner's identification of "body" in the prior art does not support Aten's attempts to recapture disclaimed scope.**

Aten's argument that the construction of the term "body" should not be limited by any disclaimer because the applicant remained silent, never corrected

---

1   the examiner, or suggested that the examiner incorrectly interpreted "body" in

2   prosecution is not new and was previously rejected by both the ITC and this

3   Court.  As the Court previously found:

4

5
> But as the ITC correctly noted, the inventor's silence when the examiner called the prior art box a body cannot be relied upon to broaden the scope of the claims. *In re Certain Switches*, 2010 WL 1278863, at n.5 (citations omitted); *see also Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1556 (Fed. Cir. 1997), overruled on other grounds by *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc); *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005). And as previously discussed, the specification clearly narrows the scope of claim 1 such that it disavows the prior art box.

6

7

8

9

10

11

12   *Aten Int'l Co. Ltd., et al. v. Emine Tech Co., Ltd, et al.*, CV No. SACV 09-0943

13   (CDCA), Dkt. No. 307 at 8-9.  Had the inventor not been confronted with prior

14   art that it carefully carved around, perhaps Aten would have a leg to stand on.

15   However, to gain issuance, the inventor freely gave up a broad, plain and

16   ordinary meaning of the word "body." *See Thorner v. Sony Computer*

17   *Entertainment Am., LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) (*quoting SciMed*

18   *Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,*242 F.3d 1337, 1341 (Fed.

19   Cir. 2001) ("where the specification makes clear that the invention does not

20   include a particular feature, that feature is deemed to be outside the reach of the

21   claims of the patent, even though the language of the claims, read without

22   reference to the specification, might be considered broad enough to encompass

23   the feature in question.").  Here, the inventor not only criticized the prior art

24   features of rigid walled encasements screwed together, but actually included a

25   diagram of that prior art as Figure 1 to make clear that his invention did not

26   include those same features.  '112 Patent 1:18-32, 36-44.

27

28

**B.** **"enclosing switching circuit with the body"**

Aten's argument that Uniclass is improperly importing limitations from the specification into its construction, ignores that the '112 Patent has a single stated "primary object" that is specific to protecting the circuit from the outside environment through "encasing a circuit board through three times injection molding …" '112 Patent 1:36-67. The specification refers to the only disclosure of the invention as the "present invention." '112 Patent 1:5-10 ("integrally injection-molded enclosure"), 1:42-43 ("The main body has an integrally injection-molded plastic enclosure…"); 2:30-36 ("The main body 20 has an integral enclosure that is formed through three times of injection molding to include a circuit-protecting layer 21 for enclosing a circuit board…"). The patent clearly describes the "present invention" as diagrammed in figures 3 and 4.

As reproduced below, "FIG. 3 is a perspective view of a main body of the automatic switch of the **present invention;** and FIG. 4 is a cross-sectional view of the main body of the automatic switch of the **present invention**."




Aten's own product that it claims is covered by the claims of the '112 Patent, pictured to the right,  clearly shows the multiple layers associated with the "encasing a circuit board through three times injection molding …"



to achieve its stated purpose of weather-resistance, impact-resistance, and absolute protection of the circuit board.  The final paragraph of the specification before the claims could not be clearer:

> In brief, the automatic switch 10 of the present invention uses the main body 20 having cable-connected connector sets 30 to replace the conventional box-type switch 40, enabling the switch 10 to be used in a more convenient manner. Moreover, **the enclosure of the main body 20 of the automatic switch 10 is integrally formed through multiple times of injection molding to protect circuits provided on the internal circuit board 24**, making the automatic switch 10 safer and more convenient for use.

'112 Patent 3:9-17 (emphasis added).

Claim differentiation does not aid Aten. Aten argues that Defendants' proposed construction of this term, which term is only found in independent **claim 21**, would render four claims dependent on **claim 1** redundant. Aten is correct that the limitations found in claim 1's dependent claims 2, 3, 5, and 7, suggest that claim 1's "a switching circuit contained within the body" limitation does not also include these limitations. However, unlike its counterpart in claim 1, claim 21 does not have dependent claims that would also add the limitations of claim 1's dependent claims 2, 3, 5, and 7.  Therefore, Aten's argument that claim 21 is differentiated from its dependent claims is incorrect and should be rejected.

When properly compared with its counterpart in claim 1, claim 21's limitation of "enclosing switching circuit with the body" should, and must, be something more. That claim 1's limitation does not include these three elements, (1) "encasing a circuit board through three times injection molding to include first a circuit-protecting layer for enclosing the circuit board," (2) "second an outer case for enclosing the circuit-protecting layer," and (3) "third an anti-slipping layer that coats the outer surface of the case," but adds these limitations through dependent claims 2, 3, 5, and 7, suggests that claim 21's counterpart limitation is something more than just a body that contains a circuit.  The

1  dependent claims to claim 21 do not add any elements that would achieve the

2  purpose of the "present invention" to absolutely protect the enclosed circuit from

3  the outside environment.  Thus, the limitation itself must include the protecting

4  features touted in the specification to set it apart from the prior art.

5      **C.     "surface of the body"**

6          Aten's gripe with Uniclass's construction is use of the word "or": "The

7  exterior **or** the anti-slipping layer of the body." The use of "or" in Defendants'

8  proposed construction does not create confusion as the only embodiment of a

9  switch disclosed in the specification, which discloses a three layered "integrally

10  injection-molded enclosure, to provide good weather-resistance, impact-

11  resistance, and absolute protection" has as its exterior surface an "anti-slipping

12  layer." Here, "or" indicates that the "anti-slipping layer" is the exterior surface. If

13  necessary, Defendants can agree to a construction that the disputed term "exterior

14  surface" be construed to mean the "anti-slipping layer of the body."

15          The same claim differentiation arguments made with respect to the

16  previous term discussed would also apply here as this limitation is not found in

17  claim 1 and no dependent claims to claim 21 adds this limitation.

18  **III.   CONCLUSION**

19          For the foregoing reasons, Defendants request that the Court adopt its

20  constructions of the disputed terms.

21  Dated: March 23, 2016                    PIA ANDERSON DORIUS

22                                          REYNARD & MOSS

23

                                           */s/Robert Aycock*
24                                          Robert Aycock

25
                                           *Attorney for Defendants*
26

27

28

---

10

1

## **CERTIFICATE OF SERVICE**

2          The undersigned hereby certifies that a true and correct copy of the above

3     and foregoing document has been served on February 23, 2016 to all counsel of

4     record who are deemed to have consented to electronic service via the Court's

5     CM/ECF system per Local Rule CV-5(a)(3).

6

7

8                                             /s/Robert Aycock_____
                                              Robert Aycock

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

11