Lei Mei (SBN 240104)
mei@meimark.com
P. Andrew Riley (Pro Hac Vice)
ariley@meimark.com
Larry Sandell (SBN 262186)
lsandell@meimark.com
Irene Chen (Pro Hac Vice)
ichen@meimark.com
MEI & MARK LLP
P.O. Box 65981
Washington, DC 20035-5981
Telephone: 888-860-5678
Facsimile: 888-706-117

[Additional counsel listed on signature page]

Attorneys for Plaintiff
ATEN INTERNATIONAL CO., LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATEN TECHNOLOGY, CO. LTD. | No.  2:15-cv-04424-AG-AJW |
| Plaintiff, | **FINAL PRETRIAL CONFERENCE ORDER** |
| vs. | |
| UNICLASS TECHNOLOGY CO., LTD., et al. | Hearing Date: June 5, 2017 |
| Defendants. | Hearing Time: 10:00 a.m. |
| | Courtroom: 10D |
| | Judge: Hon. Andrew Guilford |

Following pretrial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

1.     The parties are:

<u>Plaintiff</u>: Aten International Co., Ltd. ("Plaintiff" or "ATEN")

<u>Defendants</u>: Uniclass Technology Co., Ltd., Electronic Technology Co., Ltd., Airlink 101, Phoebe Micro Inc., Broadtech International Co., Ltd. d/b/a Linkskey, Black Box Corporation, and Black Box Corporation of Pennsylvania (collectively "Defendants" or "Uniclass").

Each of these parties has been served and has appeared.  All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are: Third Amended Complaint (Dkt. 75)

2.     Federal jurisdiction and venue are invoked upon the grounds of 28 U.S.C. §§ 1331 and 1338(a) and 28 U.S.C. §§ 1391 (b) & (c) and 1400.  Venue is proper in the Central District of California under 28 U.S.C. § 1391 because Defendants are subject to this Court's personal jurisdiction, and because this case arises out of Defendants' sale and promotion of products in this judicial district.

3.     The trial is estimated to take six (6) trial days

      a.     Plaintiff's position is that the trial will take six (6) trial days. Further, in an effort to minimize trial time and the burden on the Court and Jury, Plaintiff proposes that the parties reach agreement on representative products for the issue of infringement.

4.     The trial is to be a jury trial.  At least seven (7) days prior to the trial date, the parties shall file and serve by email, fax or personal delivery: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

5. The following facts are admitted and require no proof: None at this time.

6. The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

    a. U.S. Patent No. 7,640,289 (the "'289 patent") was issued by the United States Patent and Trademark Office on December 29, 2009.

    b. U.S. Patent No. 6,957,287 (the "'287 patent") was issued by the United States Patent and Trademark Office on October 18, 2005.

    c. U.S. Patent No. 7,472,217 (the "'217 patent") was issued by the United States Patent and Trademark Office on December 30, 2008.

    d. U.S. Patent No. 8,589,141 (the "'141 patent") was issued by the United States Patent and Trademark Office on November 19, 2013.

    e. ATEN International Co., LTD ("ATEN") is the assignee of all right, title and interest to the '289, '287, '217 and '141 patents.

7. Claims and Defenses

Plaintiff:

a. Plaintiff plans to pursue the following claims against the following defendants:

Claim 1: Infringement of the '289 patent. Plaintiff has pleaded and plans to pursue claims for direct infringement, willful infringement, actively inducing infringement of, and/or contributing to the infringement of claims 1 - 20 of the '289 patent, literally and/or under the doctrine of equivalents.

2

1    Claim 2: Infringement of the '287 patent. Plaintiff has pleaded and plans
2    to pursue claims for direct infringement, willful infringement, actively inducing
3    infringement of, and/or contributing to the infringement of claims 5 and 6 of the
4    '287 patent literally and/or under the doctrine of equivalents.

5    Claim 3: Infringement of the '217 patent. Plaintiff has pleaded and plans
6    to pursue claims for direct infringement, willful infringement, actively inducing
7    infringement of, and/or contributing to the infringement 1-4 of the '217 patent
8    literally and/or under the doctrine of equivalents.

9    Claim 4: Infringement of the '141 patent. Plaintiff has pleaded and plans
10   to pursue claims for direct infringement, willful infringement, actively inducing
11   infringement of, and/or contributing to the infringement of claims 1-17 and 26-
12   27 of the '141 patent literally and/or under the doctrine of equivalents.

13   Claim 5: Damages. Plaintiff has pleaded and plans to pursue claims for
14   damages, specifically a reasonable royalty, resulting from Defendants' infringing
15   activities as referenced above under 35 U.S.C. § 284. ATEN is also seeking
16   treble damages as Defendants have knowingly and willfully infringed the patents
17   in issue.

18   Claim 6: Injunctive relief. Plaintiff has pleaded and plans to pursue claims
19   for injunctive relief under 35 U.S.C. § 283 to prevent it from being irreparably
20   harmed by Defendants' infringing activities.

21   Claim 7: Exceptional case. Plaintiff has pleaded and plans to pursue
22   claims for an exceptional case under 35 U.S.C. § 285 as Defendants have, in
23   breach of a fully executed and enforceable license agreement, knowingly and
24   willfully engaged in direct infringement of the patents in issue, and have
25   withheld financial information and data relevant to the assessment of damages.

26       b.      The elements required to establish Plaintiff's claims are:
27           I.    Elements required to establish Plaintiff's claims for direct
28                 infringement under 35 U.S.C. § 271(a)

3

      i.     Whoever without authority (a) makes, (b) uses, (c) offers to sell, or (d) sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

      ii.    Infringement must be determined on a claim-by-claim basis, by showing that each element of the claim is present in the accused product or service either literally or under the doctrine of equivalents.

II.    Elements required to establish Plaintiff's claims for willful infringement

      i.     Willful infringement occurs when the alleged infringer acts recklessly.  35 U.S.C. § 284; In re Seagate Tech., LLC, 497 F.3d 1360 (Fed. Cir. 2007).

      ii.    Proof that an alleged infringer acts recklessly requires a showing that:

          1.  the alleged infringer acted despite a high likelihood that alleged infringer's actions infringed a valid and enforceable patent, and the alleged infringer did, or does, not have a legitimate or credible defense to the infringement, and

          2.  the alleged infringer actually knew, or should have known, that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.  WMS Gaming Inc. v. Int'l Game Tech., 184 F.3d 1339, 1354 (Fed. Cir. 1999).

4

i.  Factors tending to show that the alleged infringer actually knew, or should have known, that its actions constituted and unjustifiably high right of infringement of a valid and enforceable patent include:

1. whether the alleged infringer acted in accordance with the standards of commerce for its industry;

2. whether the alleged infringer intentionally copied a patented product of the patent holder;

3. whether there is a reasonable basis to believe that the alleged infringer did not infringe or had a reasonable defense to infringement;

4. whether the alleged infringer made a good-faith effort to avoid infringing the patents in issue, for example, whether the alleged infringer attempted to design around the patent owners patents;

5. whether the alleged infringer tried to cover up its infringement; and

6. whether the alleged infringer argues it did not act recklessly because it relied on a legal opinion that advising either (1) that the product did not infringe the patents in issue or (2) that the patents in issue were invalid or unenforceable. Knorr-Bremse v. Dana Corp., 383 F.3d 1337 (Fed. Cir. 2004) (en banc).

III.  Elements required to establish Plaintiff's claims for actively inducing infringement under 35 U.S.C. § 271(b)

i.  Whoever actively induces infringement of a patent shall be liable as an infringer.

5

ii.   35 U.S.C. § 271(b) requires an act of direct infringement, as well as proof that the accused inducer acted with knowledge that the induced acts constitute patent infringement. Global Tech Appliances, Inc. v. SEB S.A., 563 U.S. (2011).

iii.   Actual knowledge of patent infringement may be fulfilled by "willful blindness" that defendant:

1. subjectively believed there was a high probability a patent existed, and

2. made deliberate actions to avoid learning of that fact. Id.

IV.   Elements required to establish Plaintiff's claims for contributory infringement under 35 U.S.C. § 271(c)

i.   An alleged infringer is liable for contributory infringement by contributing to the direct infringement of the patent.

ii.   Indirect infringement must be determined on a claim-by-claim basis.

iii.   An alleged infringer is liable for contributory infringement of a claim if the patent owner proves by a preponderance of the evidence:

1. An alleged infringer sells, offers to sell, or imports within the United States a component of a product, or apparatus for use in a process, during the time the patent(s) in issue are in force;

2. the component or apparatus has no substantial, noninfringing use;

3. the component or apparatus constitutes a material part of the invention;

4. An alleged infringer is aware of the patent(s) in issue and knows that the products or processes for which the

6

component or apparatus has no other substantial use may
be covered by a claim of the patent(s) in issue or may
satisfy a claim of the patent(s) in issue under the doctrine
of equivalents; and

5. that use directly infringes the claim(s).

iv.   In order to prove contributory infringement, the patent holder
must prove that each of the above requirements is met by a
preponderance of the evidence.

V.   Elements required to establish Plaintiff's claims for damages
under 35 U.S.C. § 284

i.   The patent owner must prove infringement of the claims of
the patent.

ii.   The patent owner must also prove the amount of damages it is
entitled to.

iii.   The damage amount must be in an amount adequate to
compensate the Plaintiff for the infringement.

iv.   The damage award cannot be less than a reasonable royalty.

VI.   Elements required to establish Plaintiff's claim for Reasonable
Royalty

i.   A reasonable royalty rate based on the facts of the case

ii.   Relevant factors from the Georgia-Pacific Factors:

1. The royalties received by the patentee for the licensing of
the patent in suit, proving or tending to prove an
established royalty.

2. The rates paid by the licensee for the use of other patents
comparable to the patent in suit.

3. The nature and scope of the license, as exclusive or non-
exclusive; or as restricted or non-restricted in terms of

territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

8

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license. Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152 (6th Cir. 1978).

VII. Elements required to establish Plaintiff's claim for injunctive relief under 35 U.S.C. §283

    i. The patent owner has suffered irreparable harm;

9

ii.     The remedies available at law (such as money damages) are inadequate to compensate for that injury;

iii.    The balance of hardships between the parties warrant a remedy in equity; and

iv.     The public interest would not be disserved by an injunction. eBay Inc. v. MercExchange LLC, 126 S. Ct. 1837, 1839 (2006).

VIII.   Elements required to establish an Exceptional Case under 35 U.S.C. § 285

i.     A case may be found to be "exceptional" under section 285, after considering "totality of the circumstances" for any one or more of three broad reasons:

1.  lack of substantive strength of litigating position,

2.  unreasonable conduct, or

3.  subjective bad faith.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014); *ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014).

After the Court finds a case to be "exceptional," the Court must still decide whether an award of attorney fees is appropriate and, if so, the amount of fees to award.

c.     In brief, the key evidence Plaintiff relies on for each of the claims is:

ATEN asserts claims against Uniclass for (1) direct infringement, (2) induced infringement, and (3) contributory infringement of the patents referenced above.  ATEN also has claims for damages, willful infringement and injunctive relief, and maintains that this is an exceptional case.

The key evidence in support of ATEN's claims against Uniclass includes the expected testimony of its witnesses; the Exhibits in ATEN's Exhibit List and

10

the parties' joint Exhibit List; Uniclass's exhibits and witnesses, both live and via deposition; and the testimony and opinions of ATEN's experts outlined in the following reports and cited exhibits:

- Opening Expert Report of Dr. Tal Lavian, Regarding Infringement
- Rebuttal Expert Report of Dr. Tal Lavian, Regarding Validity
- Expert Report of Jeffrey G. Snell

        a)    Direct Infringement

The key evidence in support of ATEN's claims for direct infringement consists of the expected testimony of its expert, Dr. Lavian, outlined in the Opening Expert Report of Dr. Tal Lavian, Regarding Infringement, attached exhibits, and cited documents; the exhibits cited on the parties' various exhibit lists, for example documentation and source code related to the accused Uniclass products; and deposition and live testimony of Uniclass's witnesses.

ATEN will show through the evidence referenced above that Defendants directly infringed the patents in issue.  Moreover, Defendants breached the license agreement by discontinuing payment of royalties.  Uniclass's 30(b)(6) witness testified that there was a fully executed, enforceable license agreement, and that payments were not made, as per the terms of that agreement.

        b)    Willful Infringement

The key evidence in support of ATEN's claims for willful infringement consists of the expected testimony of its expert Dr. Lavian, set forth in the Opening Expert Report of Dr. Tal Lavian, Regarding Infringement and the exhibits cited therein; the exhibits cited on the parties' various exhibit lists, for example documentation and source code related to the accused Uniclass products; and deposition and live testimony of Uniclass's witnesses.

ATEN will show through the evidence referenced above that Defendants had knowledge of the patents in issue, as evidenced by the license agreement between the parties and recklessly engaged in willful infringement.

1        c)      Induced Infringement

2        The key evidence in support of ATEN's claims for induced infringement

3 consists of the expected testimony of its expert Dr. Lavian, set forth in the

4 Opening Expert Report of Dr. Tal Lavian, Regarding Infringement and the

5 exhibits cited therein; the exhibits cited on the parties' various exhibit lists, for

6 example documentation and source code related to the accused Uniclass

7 products; and deposition and live testimony of Uniclass's witnesses.

8        ATEN will show through the evidence referenced above that Defendants

9 induced infringement of the patents in issue.

10       For example, Uniclass induced third parties to directly infringe ATEN's

11 patents, including by rebranding its products for third parties to sell in the United

12 States.  Uniclass knew or acted in blatant disregard for the fact that such use

13 infringed ATEN's patents in suit.  These directly infringing third parties include

14 Airlink and Linkskey.  (Dkt. 1.)

15       d)      Contributory Infringement

16        The key evidence in support of ATEN's claims for contributory

17 infringement consists of the expected testimony of its expert Dr. Lavian, set forth

18 in the Opening Expert Report of Dr. Tal Lavian, Regarding Infringement and in

19 the exhibits cited therein; the Rebuttal Expert Report of Dr. Tal Lavian,

20 Regarding Validity and the exhibits cited therein;; the exhibits cited on the

21 parties' various exhibit lists, for example documentation and source code related

22 to the accused Uniclass products; and deposition and live testimony of Uniclass's

23 witnesses.

24       ATEN will show through the evidence referenced above that Defendants

25 contributed to infringement of the patents in issue.  For example, Uniclass

26 knowingly and continuously made and sold products, without authorization,

27 which were covered by the patents in issue and, which had no substantial non-

28 infringing uses.

12

1        e)      Damages

2        The key evidence in support of ATEN's claims for damages consists of the

3    expected testimony of its expert Dr. Lavian, set forth in the Opening Expert

4    Report of Dr. Tal Lavian, Regarding Infringement and in the exhibits cited

5    therein; expected testimony of its damages expert Dr. Jeffrey G. Snell, set forth

6    in the Expert Report of Jeffrey G. Snell; the exhibits cited on the parties' various

7    exhibit lists, for example documentation and source code related to the accused

8    Uniclass products; and deposition and live testimony of the parties' witnesses.

9        ATEN will show through the evidence referenced above that it should be

10   awarded damages for Defendants infringement of the patents in issue.  For

11   example, ATEN has suffered due to Defendants willful infringing activities.

12   ATEN will be seeking treble damages due to Defendants willful infringement of

13   the patents in issue.

14       f)      Injunctive relief

15       The key evidence in support of ATEN's claims for injunctive relief

16   consists of the expected testimony of its expert Dr. Lavian, set forth in the

17   Opening Expert Report of Dr. Tal Lavian, Regarding Infringement and in the

18   exhibits cited therein; the Rebuttal Expert Report of Dr. Tal Lavian, Regarding

19   Validity and the exhibits cited therein; the exhibits cited on the parties' various

20   exhibit lists, for example documentation and source code related to the accused

21   Uniclass products; and deposition and live testimony of the parties' witnesses.

22       ATEN will show through the evidence referenced above that injunctive

23   relief is necessary to prevent irreparable harm due to Defendants' infringing

24   activities. If Defendants are not estopped from engaging in infringing activities

25   ATEN will be divested of its rights granted under 35 U.S.C. §271, which is in

26   direct conflict with the statutory intent of spurring innovation.

27       g)      Exceptional case

28

The key evidence in support of ATEN's claims for an exceptional case directly consists of the expected testimony of its expert Dr. Lavian, set forth in the Opening Expert Report of Dr. Tal Lavian, Regarding Infringement and in the exhibits cited therein; the Rebuttal Expert Report of Dr. Tal Lavian, Regarding Validity and the exhibits cited therein; the exhibits cited on the parties' various exhibit lists, for example documentation and source code related to the accused Uniclass products; and deposition and live testimony of the parties' witnesses, including Mr. Kevin Chen, Uniclass CEO, and Mr. Alex Kuan, Uniclass President.

ATEN will show through the evidence referenced above that the case before the Court is in fact an exceptional case as Defendants continued in this litigation without a litigation position of substantive strength. This is demonstrated by Defendants' actions in regard to breaching the fully executed license agreement and failure to investigate the validity of the patents in issue. Further, Defendants acted unreasonably as there was never a line of communication established between the parties to discuss the license agreement or the validity of the patents in issue.  Defendants' bad faith conduct was shown when it discontinued royalty payments under the agreement without putting the owed monies into escrow pending investigation into the validity of the patents, or the outcome of this litigation.

Defendants:

**a.      Defendants' Positions as to Plaintiff's Infringement Claims**

During this litigation, Aten has asserted infringement of 72 claims across six patents against over 125 of Defendants' products. These patents and claims included U.S. Patent Nos.:

- 6,957,287 ("'287 Patent"), claims 1, 3-7;
- 7,472,217 ("'217 Patent"), claims 1, 3-7;
- 7,640,289 ("'289 Patent"), claims 1-20;

- 8,589,141 ("'141 Patent"), claims 1-27;
- 6,564,275 ("'275 Patent"), claim 45; and,
- 7,035,112 ("'112 Patent"), claims 1, 12-19, and 21-23.

(collectively the "Asserted Patents").

After claim construction, extensive discovery, motion practice, and reconciliation of its initial contentions, Aten has abandoned its infringement contentions as to the '275 and '112 Patents, and their asserted claims, as well as numerous other claims of the Asserted Patents, and most of the initially accused products. Additionally, after the Court granted Defendants' Motion to Strike Aten's Final Infringement Contentions Disclosed Through Its Expert Report, (see Order at dkt. no. 345), the parties were directed to identify the claims and accused products that do not depart substantially from Aten's Original Contentions. After meeting and conferring to reach agreement as to what accused products remained, the parties filed a report informing the Court that they had reached an agreement as to some but not all of the accused products that remained. (See Dkt. No. 350.)

On April 24, 2017, the Court entered its Order Granting in part and Denying in part Defendants' Partial Motion for Summary Judgment of Noninfringement of some of the Asserted Claims. (Dkt.  No. 364). However, because the parties cannot fully agree as to what accused products remain to be addressed at trial (see dkt. no. 350), Defendants present the following two tables to help identify what Asserted Claims and accused products remain and where the parties are in disagreement.

In view of the Court's recent orders concerning Defendants' motion to strike and for summary judgement of noninfringement, Defendants contend that only the following Asserted Patents, claims, and accused products remain to be addressed at the June 20, 2017 trial:

15

| Defendants' Identification of Accused Products, Asserted Patents and Claims | |
|---|---|
| Patents/Claims* | Accused Products (representative and linked products) |
| '287 Claim: 1 | Rep. product: UDV-TA2<br><br>Linked products: UDP-TA2; UHV-TA2; USB-TA2 |
| '287 Claims: 1, 5, and 6<br><br>'217 Claims: 1, 3, and 4 | Rep. product: UKA-248<br><br>Linked products: no linked products |
| '289 Claims: 1-20 | Rep. product: None*<br><br>(*Aten only analyzed the Prima 8 product in its Original Contentions and not the presently accused Prima T 4/8/16 products, which products are, and have never been, sold in the United States.)<br><br>Linked products: None |
| '141 Claims: 1-15, 26, and 27 | Rep. product: None*<br><br>(*Aten only analyzed the Prima 8 product in its Original Contentions and not the presently accused Prima T 4/8/16 products, which products are, and have never been, sold in the United States.)<br><br>Linked products: None. |
| '141 Claims: 1-17, 26, and 27 | Rep. product: AD-CP02A<br><br>Linked products: AD-EP04A |

(* collectively the "Remaining Asserted Claims").

As presently understood by Defendants, and in view of the Court's order on summary judgement of noninfringement, Aten contends that infringement of

16

the following Asserted Patents, claims, and accused products remain to be addressed at the June 20, 2017 trial:

| Aten's Identification of Accused Products, Asserted Patents and Claims ||
|---|---|
| Patents/Claims* | Accused Products (representative and linked products) |
| '287 Claims: 1, 5, and 6 | <u>Rep. product</u>: UDV-TA2<br><br><u>Linked products</u>: UDP-TA2; UHV-TA2; USB-TA2; USB-SP02A; and, USB-SP04A |
| '287 Claims: 1, 5, and 6<br><br>'217 Claims: 1, 3, and 4 | <u>Rep. product</u>: UKA-248<br><br><u>Linked products</u>: no linked products |
| '289 Claims: 1-20 | <u>Rep. product</u>: Prima T8<br><br><u>Linked products</u>: Prima T4 and Prima T16 |
| '141 Claims: 1-17, 26, and 27 | <u>Rep. product</u>: Prima T8<br><br><u>Linked products</u>: Prima T4 and Prima T16 |
| '141 Claims: 1-17, 26, and 27 | <u>Rep. product</u>: AD-CP02A<br><br><u>Linked products</u>:AD-EP04A; AH-832A and 834A; AI-832A and 834A; AL-832A and 834A; AP-832A and 834A; AD-202A and 204A; AH-202A and 204A; AD-502D and 504D; AD-502V and 504V; AD-702D and 704D; AD-702V and 704V; AL-702D and 704D |

In summary, it is Defendants' position that only seven (7) accused products should be decided at trial are:

1. UDV-TA2;

2. UDP-TA2;

3. UHV-TA2;

4. USB-TA2;

17

1     5. UKA-248;

2     6. AD-CP02A; and,

3     7. AD-EP04A.

4     ("Defendants' List of Remaining Accused Products").

5     In addition to these seven (7) accused products from Defendants' List of

6     Remaining Accused Products, Aten contends that the following twenty-seven

7     (27) products also remain at issue for trial, for a total of thirty-four (34) accused

8     products:

9     8. USB-SP02A;

10    9. USB-SP04A;

11    10. AH-832A;

12    11. AH-834A;

13    12. AI-832A;

14    13. AI-834A;

15    14. AL-832A;

16    15. AL-834A;

17    16. AP-832A;

18    17. AP-834A;

19    18. AD-202A;

20    19. AD-204A;

21    20. AH-202A;

22    21. AH- 204A;

23    22. AD-502D;

24    23. AD-504D;

25    24. AD-502V;

26    25. AD-504V;

27    26. AD-702D;

28    27. AD-704D;

18

1       28. AD-702V;

2       29. AD-704V;

3       30. AL-702D;

4       31. AL-704D;

5       32. Prima T8;

6       33. Prima T4; and,

7       34. Prima T16

8       ("Aten's List of Remaining Accused Products"). (See Tables above.)

9   Aten's List of Remaining Accused Products should be rejected as explained in

10  the parties' joint filing with the Court entitled: The Parties' Respective Proposed

11  Representative and Linked Products (Dkt. 350). In sum, Aten's list of 27

12  additional products should be rejected because they were not properly disclosed

13  in Aten's Original Contentions.

14      Plaintiff contends that Defendants literally infringe the Patents/Claims

15  identified in table above in the left hand column, as well as infringing claim 1 of

16  the '287 Patent under the doctrine of equivalents. Aten also asserts that

17  Defendants have directly and indirectly infringed the Asserted Claims pursuant

18  to 35 U.S.C. § 271. Aten also contends that Defendants have "willfully"

19  infringed the Asserted Patents. Each of Aten's claims and Defendants' relevant

20  contentions of facts and law will be addressed in turn.

21      **b.      Plaintiff's Damages Claims**

22      The Court, in its Order re Defendants' Motion for Summary Judgment on

23  Aten's Lost Profits Damages, found that Aten could not maintain its claim for

24  lost profits damages as presented in its financial expert's report. (See Dkt. No.

25  363). Without lost profits damages, only a claim for a reasonable royalty

26  remains. Aten's reasonable royalty damages set forth in its expert report assume

27  a finding of infringement of at least one valid patent claim on all 34 of the

28  accused products it contends should be considered at trial.

## I.   Plaintiff's Damages Claims

Aten's total reasonable royalty only amounts to **$682,382** for all thirty-four (34) accused product sales through July 15, 2016. However, the Prima T products must be removed from this calculation because they have never been sold in the U.S. Aten's revised total is **$517,683**.

The total royalty amount is significantly less when only the seven (7) permissible accused products are considered.  See Uniclass' table of Patents/Claims and Accused Products above; The Parties' Respective Proposed Representative and Linked Products (Dkt. 350). The updated total damages amount under Aten's royalty calculation is $93,530. Again, this is under Aten's own damages expert's calculation.

## II.   Defendants' Damages Claims

Conversely, under Defendants' damages expert's reasonable royalty calculation for all of Aten's thirty-four (34) accused product sales, the total damages amount is only **$87,542** for sales through July 15, 2016.

When the Prima T product line is removed because these products were only sold outside of the U.S., this amount decreases to **$65,546**.

And again, the total royalty amount is even less when only the seven (7) permissible accused products are considered.  See Uniclass' table of Patents/Claims and Accused Products above; The Parties' Respective Proposed Representative and Linked Products (Dkt. 350). The total amount decreases to **$12,473**.

Furthermore, Aten has not presented or identified any evidence that Defendants, other than Uniclass, are susceptible to liability apart from Uniclass' alleged infringement. If the above reasonable royalty were paid, then the other Defendants would owe nothing as a single royalty per product may be attributed to each sale under patent exhaustion. As such, these other defendants should be dismissed, or alternatively severed from the case.

### III.  Settlement

At the total damage calculations presented under either Aten's theory or Defendants'theory, this case is ripe for settlement.  However, Aten insists upon injunctive relief and a settlement in the amount of its highest possible damages amount at trial, and treble damages.  Aten further appears to believe that it will reverse the Court's ruling on the Motion to Strike on appeal, and that all originally accused products should be assessed a royalty.  Therefore, the parties have been unable to settle.

### IV.  Non-infringement

At trial, Plaintiff bears the burden of proving infringement by a preponderance of evidence. E.g., Federal Circuit Bar Association Model Jury Instructions, B.3.1.

Inasmuch as the Asserted Claims are method claims, Aten bears the burden of proving that Defendants practice each and every step of the claimed method(s). E.g., Federal Circuit Bar Association Model Jury Instructions, B.3.1. Inasmuch as the Asserted Claims depend on Asserted Independent Claims, if the Asserted Independent Claims are not infringed, then the Asserted Dependent Claims cannot be infringed. E.g., Federal Circuit Bar Association Model Jury Instructions, B.3.1 ("You must determine, separately for each asserted claim, whether or not there is infringement. There is one exception to this rule. If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.")

### i.  Literal Infringement

To decide whether Defendants' accused products, and use of such products, literally infringe any of the Asserted Claims, a comparison will need to be made of Defendants' accused products and their use with the patent claims to determine whether every requirement of the claim(s) is included in each product

21

or use. If so, Defendants' accused products and use literally infringes the claims. If, however, Defendants' accused products and use do not meet every requirement in the patent claims, Defendants' accused product(s) and use do not literally infringe those claims. Literal infringement for each asserted claim must be decided separately. E.g., Federal Circuit Bar Association Model Jury Instructions, B.3.3.

In defense to the claims of infringement, Defendants will rely on the following key facts and evidence (which facts, evidence and arguments are detailed in the Dezmelyk Report and supporting documentation):

    a. The structure and function of the accused products;

    b. Technical documents, including but not limited to schematics, user guides, source code, etc.;

    c. Testimony of Uniclass personnel;

    d. The expert report, together with related testimony of Defendants' expert Robert Dezmelyk; and,

    e. The prosecution histories of the Asserted Patents and cited prior art.

Defendants will also show that Plaintiff cannot meet its burden of proof as Aten admitted that it did not secure evidence during fact discovery to meet its burden at trial. During discovery, Aten failed to timely inspect the source code associated with all but a handful of the accused products. As admitted by Aten's technical expert in his September 30, 2016 Expert Report of Dr. Tal Lavian Regarding Infringement, Dr. Lavian was unable to assess infringement without source code. Further, according to its expert and infringement contentions, Aten has only inspected a few of the accused products. As such, Aten cannot meet its burden of proof at trial.

During claim construction briefing, Aten's previous expert, Mr. Narad, opined that the Court's construction concerning the "wherein" clause of claim 1 of the '287 Patent, and the construction Defendants proposed be readopted by the

Court, could not be implemented in the accused products. Examples of what Mr. Narad said include:

> For example, Defendants' proposed construction [the construction the Court readopted] requires that "the data stream passing between the first computer system and the peripheral device is left uninterrupted" when the peripheral device is "switched from a first computer system to another computer system." As discussed above, a data flow cannot be maintained between a peripheral device and a first computer if the peripheral device is switched to a different computer; if the channel is not connected then a data flow cannot exist. For this reason the proposed construction renders the construed claim not implementable.

(Dkt. 93-1 p. 33); and,

> a POSITA would understand that synchronous switching which switched a peripheral device away from a first computer and to a second computer, would of necessity interrupt a data flow between the first computer and the peripheral device.

(Dkt. 93-1 p. 34.)  Consistent with this understanding, on May 25, 2016, then counsel for Aten via email, notified Defendants that Aten would no longer be asserting claim 1 of the '287 Patent:

| | |
|---|---|
| **From:** | Timothy Devlin |
| **To:** | Joseph Pia |
| **Cc:** | Robert Aycock; jflee (jflee@ltpacificlaw.com); Michael Siem; Timothy Devlin |
| **Subject:** | ATEN/Uniclass |
| **Date:** | Wednesday, May 25, 2016 9:03:24 AM |

Joe,

This email memorializes our discussion from last Friday.  Thanks again for taking the time to talk.

First, we confirm that, following the Court's Markman ruling, ATEN will no longer assert claims 5-7 of the '217 patent, and claims 1-4 and 7 of the '287 patent   ATEN maintains its allegations regarding the remaining asserted claims of those two patents, as well as all asserted claims of the '289 and '141 patents.  Those remaining asserted claims are set forth in ATEN's prior contentions.  The accused products are also

## V.   There is No Infringement of Claim 1 of the '287 Patent Under the Doctrine of Equivalents

Aten contends that, notwithstanding the '287 Patent's requirement that "[b]oth synchronous and asynchronous switching must be performed such that the data stream passing between the first computer system and the peripheral device is left uninterrupted at the time of switching," dkt. no. 226, Defendants may nonetheless infringe claims 1 and 6 of the '287 Patent under the doctrine of equivalents. Aten maintains, despite its counsel's representations that it was dropping claim 1, that it will assert this claim, and even if the jury determines that there is no literal infringement because Defendants' accused products cannot meet this limitation, Aten would be permitted to attempt to prove by a preponderance of the evidence that Defendants' accused products infringe claim 1 under the doctrine of equivalents.

The Court, in its claim construction order, Dkt. No. 226, construed the "wherein" clause of claim 1 of the '287 Patent,

> wherein the console devices can be switched either synchronously or asynchronously with the one or more than one peripheral device to the same one of the plurality of computer systems or to different ones of the plurality of computer systems, without interruption of the signal to the one or more than one peripheral device

to mean a

> [c]onsole devices can be switched among computer systems either together with the switching of peripheral devices (i.e., synchronous switching) or independently (i.e., asynchronous switching.) Both synchronous and asynchronous switching must be performed such that the data stream passing between the first computer system and the peripheral device is left uninterrupted at the time of switching.

(Dkt. 226.)

Under the doctrine of equivalents, the accused products can infringe an Asserted Claim only if its switching function is identical or equivalent to the

24

limitation as construed by the Court, "[c]onsole devices can be switched among computer systems either together with the switching of peripheral devices (i.e., synchronous switching) or independently (i.e., asynchronous switching). Both synchronous and asynchronous switching must be performed such that the data stream passing between the first computer system and the peripheral device is left uninterrupted at the time of switching." The accused products' switching function is equivalent to this limitation if a person of ordinary skill in the field would think that the differences between the two were not substantial as of the time of the alleged infringement.

One way to decide if the two are equivalents is to consider whether, as of the time of the alleged infringement, the accused products perform substantially the same function, in substantially the same way, to achieve substantially the same results as "[c]onsole devices can be switched among computer systems either together with the switching of peripheral devices (i.e., synchronous switching) or independently (i.e., asynchronous switching). Both synchronous and asynchronous switching must be performed such that the data stream passing between the first computer system and the peripheral device is left uninterrupted at the time of switching." Dkt. 226 (the Court adopting its prior claim construction in ATEN International Co., Ltd. et al. v. Emine Technology Co., Ltd. et al., SACV 09-0843 AG (MLGx).)

Plaintiff may not use the doctrine of equivalents to establish infringement if Defendants' accused products operate the same as what was in the prior art before the application for the '287 Patent or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art. A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.

Also, there is no infringement under the doctrine of equivalents for claim 1 of the '287 Patent because Aten cannot use this doctrine to extend claim 1's

scope to cover the prior art it was amended to overcome. DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1332 (Fed. Cir. 2001.) The doctrine of equivalents does not permit the patent holder to recapture through equivalents coverage surrendered during prosecution. Id. "Clear assertions made during prosecution in support of patentability, whether or not actually required to secure allowance of the claim, may … create an estoppel." Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1583 (Fed. Cir. 1995.) The Court in this case has already found in its Claim Construction Order that "it is clear that the ability to switch synchronously and asynchronously without interruption of the data flow is the crucial distinction from the prior art…." Dkt. 226 (the Court adopting its prior claim construction in ATEN International Co., Ltd. et al. v. Emine Technology Co., Ltd. et al., SACV 09-0843 AG (MLGx).)

Plaintiff may not use the doctrine of equivalents to establish infringement if the subject matter alleged to be equivalent to a requirement of the patent claim was described in the '287 Patent but not covered by any of its claims. E.g., Federal Circuit Bar Association Model Jury Instructions, B.3.4.

In defense to a claim of infringement under the doctrine of equivalents, Defendants will rely upon, inter alia, the content of the '287 Patent and its file wrappers, together with the law on surrender and file wrapper estoppel.

## VI.   There is No Indirect Infringement

Liability for indirect infringement (inducement and/or contributory infringement) must be predicated on a finding of direct infringement. Limelight Networks, Inc. v. Akamai Techs., Inc., 134 S. Ct. 2111 (U.S. 2014); Akamai Techs., Inc. v. Limelight Networks, Inc., 797 F.3d 1020 (Fed. Cir. 2015) (on remand, en banc). Based on the law and the facts related to infringement and divided infringement set forth above, Aten cannot prove direct infringement, and thus, there can be no indirect infringement.

## VII.    There is No willful Infringement

Plaintiff will bear the burden of establishing willfulness in accordance with the standard set forth above and governing law.  In defense to the claim of willful infringement, Defendants will rely on at least the following key facts and evidence as set forth in the Expert Reports of Robert Dezmelyk and Scott Cragun, and portions of the Reports of Plaintiff's Experts, the exhibits cited on the parties' various exhibit lists, and deposition and live testimony of Aten and Uniclass.  Defendants will show through the evidence referenced throughout this filing that:

(a) That one or more of the patents are not infringed either directly, indirectly, or under the doctrine of equivalents.

(b) The one or more of the patents are invalid.

(c) Aten cannot establish that there ever has been a high likelihood that its patents are valid and infringed.

(d) That Defendants had legitimate and credible defenses to assertions of infringement.

(e) The claim construction in the Emine Litigation and this case establishes non-infringement.

(f) The settlement by Aten with other accused infringers on the same patents for no money and no injunctions.

(g) Defendants' reliance on the claim construction in the Emine litigation and concluding that they did not infringe or that the patents were materially limited, was reasonable.

(h) Defendants' understanding that the patents identified in the License Agreement had been "materially limited", pursuant to provision 4 of that Agreement was reasonable.

(i) Plaintiff has asserted Patents against Defendants that it knows are not infringed or not valid, including without limitation the '275 patent and

27

the '112 patent that were dropped from the case (and were identified in the License Agreement). This constitutes patent misuse and generally undermines Plaintiff's arguments that the other Patents were knowingly and willfully infringed.

(j) Aten maintained that the UKA-248/LKV-248AUSK infringed the '141 Patent for two years, even though Aten admitted in its Opposition to Defendants' Motion for Partial Summary Judgment of Invalidity of the '141 patent that it performed no or relatively little investigation or analysis as to the infringement of the UKA-248/LKV-248AUSK against most of the asserted claims of the '141 Patent, stating:

> While ATEN included the LKV-248AUSK in the list of products originally believed to infringe the '141 Patent, ATEN itself did not even chart many of the claims against the LKV-248AUSK. Instead, ATEN only charted claims 16-24 against that product (DKT 266-2 at 4.) **Thus the vast majority of claims of the '141 patent [sic] have never been compared to any LKV-246AUSK [sic] product.**

(Aten's International's Opposition to Defendants' Motion for Summary Judgment of Invalidity as to All Claims of U.S. Patent No. 8,589,141, dkt. no. 301 at page 13:3-7 (emphasis added).)

(k) Plaintiff cannot carry its burden, and has made no effort to establish an evidentiary groundwork, for showing willfulness for each Defendant.

(l) In particular, Aten has provided no allegation or evidence regarding its willfulness claim against any defendant other than Uniclass.

## VIII.   Aten is not entitled to damages under its theories

To establish that Aten is not entitled to damages under its reasonable royalty theory and an injunction, Defendants will rely on at least the key facts and evidence as set forth in the Expert Reports of Robert Dezmelyk and Scott Cragun, and portions of the Reports of Plaintiff's Experts, the exhibits cited on

the parties' various exhibit lists, and deposition and live testimony of Aten and Uniclass.

### IX.   The Asserted Claims Are Invalid and/or Not Infringed

As discussed above and below, and as set forth in the Dezmelyk Report, if the Asserted Claims are applied as broadly as Aten now asserts in its infringement theories and contentions, the Asserted Claims are invalid in view of the prior art as both anticipated and obvious. Further, certain other claims of the Asserted Patents are invalid for failure to meet the requirements set forth in 35 U.S.C. § 112. (See Dezmelyk Report.)

### X.   Even Assuming Validity and Infringement, Aten's Damages Are Limited to a Reasonable Royalty

The Court has already determined in its Order re Defendants' Motion for Summary Judgment on Aten's Lost Profits Damages found that Aten cannot meet its burden for lost profits damages. (See Dkt. No. 363). Thus, Aten, if it is able to meet its burden of proving infringement, can only obtain reasonable royalties.

### XI.   Even Assuming Validity and Infringement, Aten is Not Entitled to an Injunction.

Aten is not entitled to injunctive relief because, among other things, it cannot show irreparable harm.  Aten did not seek a temporary restraining order or preliminary injunction in this case, and instead opted for seeking money damages at trial.  It could not seek early injunctive relief because Aten could not show a likelihood of success on infringement and validity of the asserted patents, and still cannot.  Further, Aten could not establish irreparable harm because all of the relief it seeks can be quantified in money damages.  If Aten cannot quantify its damages to some degree, it is because Aten did not or cannot sufficiently undertake evidentiary findings, not because it is entitled to injunctive relief.  (See Cragun and Dezmelyk Expert Reports of the Defendants and other evidence cited

29

in this section; see also Plaintiff's expert reports of Lavian and Snell and their deposition transcripts, and exhibits thereto)

### XII.   Even Assuming Validity and Infringement, Aten is Not Entitled to Damages for Any Activities Occurring Outside of the US.

Aten cannot provide any cognizable legal theory for obtaining damages on sales of products outside of the United States. See 35 U.S.C. § 271(a). Aten has no factual or legal basis for seeking damages on sales outside of the United States.

### XIII.   Plaintiff is Not Entitled to Enhanced Damages or Attorneys' Fees Because the Infringement, if Any, is Not Willful.

Aten is not entitled to enhanced damages or attorneys' fees because the infringement, if any, is not willful. Further Aten cannot meet any applicable test under 35 U.S.C. § 285 and applicable case law including Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749 (2014).  Instead, Defendants are entitled to their attorneys' fees and costs because this is an exceptional case under those same standards as set forth below.

### XIV.   DEFENDANTS' COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

#### i.   Invalidity Based on § 112 –Lack Written Description and are Indefinite.

#### 1. Lack of Written Description

Defendants contend that the Asserted Claims of the '289 and '141 Patents are invalid because the specifications of the Asserted Patents do not contain an adequate written description of the invention.

To succeed, Defendants must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of

the invention. E.g., Federal Circuit Bar Association Model Jury Instructions, B.4.2.a.

In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued. An applicant may amend the claims or add new claims. These changes may narrow or broaden the scope of the claims. The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application. E.g., Federal Circuit Bar Association Model Jury Instructions, B.4.2.a.

In deciding whether the patent satisfies this written description requirement, the jury must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application. E.g., Federal Circuit Bar Association Model Jury Instructions, B.4.2.a.

In support of it § 112 defenses and counterclaims, Defendants will rely on the following key facts and evidence:

A.   The Asserted Patents, their file wrappers, together with related testimony.

B.   All evidence and testimony used in defense of Aten's claims of infringement.

C.   The expert report, together with related testimony, of Robert Dezmelyk.

31

## 2.  Asserted Claims are Indefinite

Defendants contend that claim 6 of the '287 patent is invalid as indefinite. "[A] single claim covering both an apparatus and a method of use of that apparatus" is invalid if "it is unclear whether infringement ... occurs when one creates a[n infringing] system, or whether infringement occurs when the user actually uses [the system in an infringing manner]." IPXL Holdings, LLC v. Amazon.com, Inc., 430 F.3d 1377, 1384 (Fed.Cir.2005). Claim 6 of the '287 Patent depends from independent claim 1, an apparatus claim, and independent claim 5, a method claim. In support of their indefinite claim, Defendants will rely on the following key facts and evidence:

- The Asserted Patents, their file wrappers, together with related testimony.
- All evidence and testimony used in defense of Aten's claims of infringement.
- The expert report, together with related testimony, of Robert Dezmelyk.

## 3.  Invalidity Based on § 102 – Anticipation

In order for someone to be entitled to a patent, the invention must actually be "new." In general, inventions are new when the identical method has not been made, used, or disclosed before. Anticipation must be determined on a claim-by-claim basis. E.g., Federal Circuit Bar Association Model Jury Instructions, B.4.3.b.1.

Defendants contend that all of the Asserted Claims are invalid because the claimed inventions were anticipated. Defendants must prove anticipation by clear and convincing evidence. E.g., Federal Circuit Bar Association Model Jury Instructions, B.4.3.b.1.

Defendants may prove a patent claim was not new in a number of ways, including:

(1) An invention is not new if it was known to or used by others in the United States before November 9, 2001 for the '287 and '217 Patents; November 8, 2001 for the '289 Patent; and July 24, 2007 for the '141 Patent. An invention is known when the information about it was reasonably accessible to the public on that date; or

(2) An invention is not new if it was already patented or described in a printed publication, anywhere in the world before November 9, 2001 for the '287 and '217 Patents; November 8, 2001 for the '289 Patent; and July 24, 2007 for the '141 Patent. A description is a "printed publication" only if it was publicly accessible; or

(3) Aten has lost its rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by Aten or anyone else, more than a year before November 9, 2001 for the '287 and '217 Patents, November 8, 2001 for the '289 Patent, and July 24, 2007 for the '141 Patent, which are the effective filing dates of the applications for the Asserted Patents. An invention was patented by another if the other patent describes the same invention claimed by Aten to a person having ordinary skill in the technology; or

(4) An invention is not new if it was described in a published patent application filed by another in the United States or under the PCT system and designated the United States, and was published in English before November 9, 2001 for the '287 and '217 Patents, November 8, 2001 for the '289 Patent, and July 24, 2007 for the '141 Patent; or

(5) An invention is not new if the claimed invention was described in a patent granted on an application for patent by another filed in the United States or under the PCT system and designated the United

33

States, and was published in English and the application was filed before November 9, 2001 for the '287 and '217 Patents, November 8, 2001 for the '289 Patent, and July 24, 2007 for the '141 Patent; or

(6) Aten is not entitled to the Asserted Patents if the named inventors did not themselves invent the invention; or

(7) An invention is not new if the invention was made by someone else in the United States before the invention was made by Plaintiff and the other person did not abandon, suppress, or conceal the invention.

E.g., Federal Circuit Bar Association Model Jury Instructions, B.4.3.b.1.

In support of it § 102 defenses and counterclaims, Defendants will rely on the following key facts and evidence (which facts, evidence and arguments are detailed in Defendants' Invalidity Contentions and the Dezmelyk Report):

A.   The Asserted Patents, their file wrappers, together with related testimony.

B.   Additional patents owned by Aten, together with their file wrappers and/or reexaminations.

C.   The Court's claim construction.

D.   The parties' claim construction briefing.

E.   Prior art, including without limitation, that disclosed in Defendants' Invalidity Contentions and in the Dezmelyk Report.

F.   Dezmelyk Report, and Lavian Reports.

G.   Aten's Original Infringement Contentions.

### 4.  Invalidity Based on §103 – Obviousness

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the

34

field of technology of the patent as of March 29, 2001. E.g., Federal Circuit Bar Association Model Jury Instructions, B.4.3.c.

Defendants must establish obviousness by clear and convincing evidence. E.g., Federal Circuit Bar Association Model Jury Instructions, B.4.3.c.

In determining whether a claimed invention is obvious, the jury must consider the level of ordinary skill in the field of water treatment that someone would have had at the time the patent application was filed, the scope and content of the prior art, and any differences between the prior art and the claimed invention. E.g., Federal Circuit Bar Association Model Jury Instructions, B.4.3.c.

In considering whether a claimed invention is obvious, the jury may, but is not required to find obviousness if it finds that at the time of the patent's filing date there was a reason that would have prompted a person having ordinary skill in the field of water treatment to combine the known elements in a way the claimed invention does, taking into account such factors as:

(1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

(2) whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(4) whether the prior art teaches away from combining elements in the claimed invention;

(5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

(6) whether the change resulted more from design incentives or other market forces.

35

1    E.g., Federal Circuit Bar Association Model Jury Instructions, B.4.3.c.

2         In support of it § 103 defenses and counterclaims, Defendants will rely on

3    the following key facts and evidence (which facts, evidence and arguments are

4    detailed in Defendants' Invalidity Contentions and the Dezmelyk Report):

5         A.    The Asserted Patents, their file wrappers, together with related

6               testimony.

7         B.    Additional patents owned by Aten, together with their file wrappers

8               and/or reexaminations.

9         C.    The Court's claim construction.

10        D.    The parties' claim construction briefing.

11        E.    Prior art, including without limitation, that disclosed in Defendants'

12              Invalidity Contentions and in the Dezmelyk Report.

13        F.    Dezmelyk Report, and Lavian Reports.

14        **XV.    This is an exceptional case, entitling Defendants to their**

15              **attorneys' fees and costs.**

16        Due to Aten's exceptional litigation tactics and behavior in this case,

17   Defendants will seek their costs and attorneys' fees pursuant to 35 U.S.C. § 285;

18   "[t]he court in exceptional cases may award reasonable attorney fees to the

19   prevailing party." See also Octane Fitness, LLC v. ICON Health & Fitness, Inc.,

20   134 S. Ct. 1749 (2014). Under 35 U.S.C. § 285, courts have discretion to award

21   reasonable attorneys' fees in patent infringement cases that are deemed

22   "exceptional." E.g., Mathis v. Spears, 857 F.2d 749, 754 (Fed. Cir. 1988). A case

23   may also be found exceptional if it is (1) brought subjectively in bad faith and (2)

24   is objectively baseless. Brooks Furniture v. Dutailier Int'l, 393 F.3d 1378, 1381

25   (Fed. Cir. 2005). Where a patentee knew or should have known that its asserted

26   claims are not infringed, a court may infer that the case was brought or

27   maintained in bad faith. See, e.g., Kilopass Technology, Inc. v. Sidense Corp.,

28   738 F.3d 1302, 1309-12, 1315 (Fed. Cir. 2013) (holding that objective or

1   subjective bad faith prosecution of claims can be the basis for attorneys' fees).

2   Subjective bad faith can be inferred where the patentee deliberately failed to

3   investigate whether a claim element was absent from the accused device. See id.

4          Defendants plan to ask this Court to declare the case exceptional and for

5   an award of their attorneys' fees incurred as a result of having to defend against

6   Plaintiff's unusual and improper litigation approach, as well as taking

7   unsupportable procedural and substantive positions in the case that have

8   unnecessarily multiplied the proceedings and increased the fees and costs against

9   the Defendants who are their market competitors.

10          Plaintiff's filing its complaint in Texas, despite this Court having already

11   construed significant claim terms at issue, and forcing Defendants to comply

12   with an accelerated docket and redo work that had already been performed before

13   this Court in prior cases was an unnecessary and wasteful litigation tactic.

14   Defendants prevailed in transferring the case to this district and away from the

15   Eastern District of Texas.  This Court then applied its same prior claim

16   constructions to every previously construed claim term in accordance with

17   Defendants' early warnings to Plaintiff that this would likely be the outcome, and

18   that Plaintiff should not take infringement positions that expanded the meaning

19   of the terms unreasonably beyond this Court's constructions from the Emine

20   Litigation.

21          Plaintiff's shotgun approach of asserting 6 patents and 72 claims against

22   more than 125 accused products has made this case unwieldy from the start.

23   Plaintiff accused, and has continued to accuse, products that are and were not

24   sold in the United States, and maintained infringement allegations against those

25   products even though evidence had been provided that they could not infringe

26   under U.S. patent law.

27          Defendants are already prevailing parties with respect to the '275 Patent

28   and the '112 Patent that were dismissed from this case after claim construction

1   and repeated demonstrations to Plaintiff's counsel that it was asserting a patent

2   claim that was mistakenly allowed through a clerical error of the USPTO.

3        Defendants were successful in striking Plaintiff's expert report resulting in

4   a reduction of nearly 100 accused products down to 34 accused products or less.

5   Yet, during the entire pendency of the action, including claim construction and

6   discovery, Defendants were required to address all asserted claims and undertake

7   infringement/non-infringement and invalidity analyses as to all accused products.

8   Plaintiff's shotgun strategy ran up costs unnecessarily.

9        As the case moved towards trial, Defendants sought to work with Plaintiff

10   in vacating the trial date when it became clear that trial prep on the more than

11   120 accused products would become unnecessary if all, or a part of the motion to

12   strike and partial motions for summary judgment were granted. Plaintiff  refused.

13   The result was that Defendants were required to conduct trial prep on all accused

14   products that resulted in significant unnecessary costs.  Plaintiff's lack of

15   diligence in accusing many products that simply could not infringe – even when

16   put on express notice of flaws in Plaintiff's analysis makes this case exceptional.

17   Ultimately, the trial prep was unnecessary as along the lines of Defendants'

18   request the date was moved.

19        Adding to these unnecessary complication and expenditure of both the

20   parties' and Court's resources, is Plaintiff changed law firms more than four times

21   during the case and changed lead trial counsel more than five times.  Each

22   change caused time and expense to be incurred by Defendants in retreading many

23   agreements of counsel and issues that had been resolved, or could not be resolved

24   because of the changes.  Many deadlines including discovery and expert reports

25   were repeatedly extended to accommodate changes in counsel. Source code

26   review, that became the focus of many disputes and motion practice, would have

27   been substantially streamlined if Plaintiff had not changed counsel multiple

28   times.  Eventually, Plaintiff agreed to pay some of Defendants' costs associated

with post-discovery source code review, evidencing the injustice that was and continued to occur. However, Plaintiff has failed to make any such agreed to payment.

Defendants will also seek attorneys' fees as the prevailing party pursuant to 35 U.S.C. § 284.


Third Party Plaintiffs and Defendants:

There are no similar statements for third parties.


8.    In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

Claims and defenses related to the issues of injunctive relief and exceptional case are issues of law for the Court to decide; each has been outlined above.  Plaintiff ATEN reserves the right to raise additional issues of law as they become apparent.

9.    All discovery is complete.

10.    All disclosures under F.R.Civ.P.26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-61.  Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except for the objections indicated in the attached Appendix.

11.    Witness lists of the parties have been filed with the Court. Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7.  For this purpose, the following depositions shall be lodged with the Clerk as required by L.E. 32-1: None.

12.    The following law and motion matters and motions in limine, and no others, are pending or contemplated:

- Plaintiff's Motion to Exclude Expert Testimony (Dkt. 294)
- Plaintiff's Motion in Limine 1 to Preclude Unproduced Source Code (Dkt. 308)
- Plaintiff's Motion in Limine 2 to Exclude Argument That the ATEN/Uniclass License Agreement Only Includes Three Patents (Dkt. 323)
- Plaintiff's Motion in Limine 3 to Exclude Expert Testimony (Dkt. 313)
- Plaintiff's Motion in Limine 4 to Exclude Reference to Forum-Shopping (Dkt. 324)
- Plaintiff's Motion in Limine 5 to Exclude Expert Testimony of Cragun (Dkt. 312)
- The Parties' Respective Proposed Representative and Linked Products (Dkt. 350);
- Defendants' Motion in limine 1 to Exclude Expert Opinions and Testimony of Tal Lavian (Dkt. 368);
- Defendants' Motion in limine 2 to Exclude Claims Against Defendants Other than Uniclass Technology, Co. Ltd. (Dkt. 369);
- Defendants' Motion in limine 3 to Exclude the Expert Opinion of Jeffrey Snell (Dkt. 371); and,
- Defendants' Motion in limine 4 to Exclude Any Claim or Evidence of Breach of Contract (Dkt. 373).

13.     Bifurcation of the following issues for trial is ordered:

Plaintiff's Position: None.

Defendants' Position: Defendants, as set forth in their Motion in limine to Exclude Claims Against Defendants other than Uniclass Technology, Co. Ltd. believe that for a more orderly and efficient trial that these defendants should be

severed from the case as any and all relief Aten has requested can be taken against the Uniclass Defendant.

14.    The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.


Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated:   6/5/2017     

_____
UNITED STATES DISTRICT JUDGE
ANDREW J GUILFORD


Dated:  May 25, 2017               Respectfully Submitted,

                    /s/ P. Andrew Riley
                    Lei Mei (SBN 240104)
                    mei@meimark.com
                    P. Andrew Riley (Pro Hac Vice)
                    ariley@meimark.com
                    Larry Sandell (SBN 262186)
                    lsandell@meimark.com
                    Irene Chen (Pro Hac Vice)
                    ichen@meimark.com
                    MEI & MARK LLP
                    P.O. Box 65981
                    Washington, DC 20035-5981
                    Telephone: 888-860-5678
                    Facsimile: 888-706-117

                    Manni Li (SBN 273984)
                    mli@meimark.com

41

Mei & Mark LLP
433 North Camden Drive, Suite 400
Beverly Hills, CA 90210
Telephone: 888-860-5678 ext. 713
Facsimile: 310-564-2769

Attorneys for Plaintiff
ATEN INTERNATIONAL CO., LTD.