Lei Mei (SBN 240104)
mei@meimark.com
P. Andrew Riley (*Pro Hac Vice*)
ariley@meimark.com
Larry Sandell (SBN 262186)
lsandell@meimark.com
Irene Chen (*Pro Hac Vic*e)
ichen@meimark.com
MEI & MARK LLP
P.O. Box 65981
Washington, DC 20035-5981
Telephone: 888-860-5678
Facsimile: 888-706-117

[Additional counsel listed on signature page]

Attorneys for Plaintiff
ATEN INTERNATIONAL CO., LTD.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

|  |  |
|---|---|
| **ATEN INTERNATIONAL CO., LTD.,**<br><br>Plaintiff,<br><br>vs.<br><br>**UNICLASS TECHNOLOGY CO. LTD., et al.,**<br><br>Defendants. | Case No. 2:15-cv-04424-AJG-AJW<br><br>**ATEN INTERNATIONAL CO. LTD.'S OPPOSITION TO DEFENDANTS' MOTION FOR EXCEPTIONAL CASE DETERMINATION UNDER 35 U.S.C. § 285**<br><br>Hearing Date: February 26, 2018<br>Hearing Time: 10:00 a.m.<br><br>Courtroom: 10D<br>Hon. Andrew Guilford |

# TABLE OF CONTENTS

I.     Introduction ............................................................................................. 1

II.    Argument ................................................................................................. 1

     A.     Defendants' Motion Should Be Denied Because It Is Untimely ............... 1

     B.     Defendants' Motion Should Also Be Denied on Substantive Grounds ..... 2

         1.     Legal Standards ........................................................................ 2

         2.     Defendants Failed to Show that ATEN "Did Not Conduct an Adequate Pre-Filing Investigation" ............................. 3

         3.     Defendants Failed to Show that ATEN "Unnecessarily Increased the Costs of Claim Construction" ................................. 11

         4.     Defendants Failed to Show that ATEN's "Changes in Counsel and Infringement Positions Drastically Increased the Costs of Discovery" ............................................. 13

         5.     Defendants Failed to Show that ATEN's Litigation Behavior Was "Unreasonable" and "Required Additional Motion Practice in the Lead-Up to Trial" ................... 21

         6.     Defendants Failed to Show that ATEN's Litigation Behavior Was "Exceptional" and "Led to an Expensive and Disproportionate Trial" ......................................................... 23

III.   Conclusion ............................................................................................ 25

1

2

**TABLE OF AUTHORITIES**

3

**Cases**                                                                    **Page**

4

*ATEN v. Emine Tech Co., Ltd,*
  No. 09-cv-0943-AG (C.D. Cal. 2009) .......................................................... 13

5

6

*Envsys LLC v. AT&T Mobility LLC,*
  No. 11-cv-5210-SS, 2016 U.S. Dist. LEXIS 87814
  (Feb. 16, 2016).......................................................... 3, 8, 9, 11, 19, 22

7

8

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.,*
  790 F.3d 1369 (Fed. Cir. 2015) .......................................................... 9

9

*Large Audience Display Sys., LLC v. Tennman Prods., LLC,*
  No. 11-cv-03398-R, 2017 U.S. Dist. LEXIS 62617 (C.D. Cal. Apr. 10,
  2017) .......................................................... 12

10

11

*Implicit Networks, Inc. v. Hewlett-Packard Co.,*
  No. 3-10-cv-03746, 2011 U.S. Dist. LEXIS 100283 (N.D. Cal. Sept. 7,
  2011) .......................................................... 5-6

12

13

*Microsoft Corp. v. i4i Ltd. P'ship,*
  564 U.S. 91 (2011) .......................................................... 7

14

15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
  134 S. Ct. 1794 (2014) .......................................................... 2, 18, 22

16

*Q-Pharma, Inc. v. Andrew Jergens Co.,*
  360 F.3d 1295 (Fed. Cir. 2004) .......................................................... 4

17

18

*SFA Sys. v. Newegg, Inc.,*
  793 F.3d 1344 (Fed. Cir. 2015) .......................................................... 3, 9, 18, 22

19

*Tech. Properties Ltd. LLC v. Canon Inc.,*
  Case No. 14-cv-3640-CW, 2015 WL 5118687 (N.D. Cal. Aug. 31, 2015)....5

20

21

*Texas Instruments v. Cypress Semiconductor Corp.,*
  90 F.3d 1558 (Fed. Cir. 1996) .......................................................... 13

22

*Universal Elecs., Inc. v. Universal Remote Control, Inc.,*
  No. 12-cv-00329-AG, 2015 U.S. Dist. LEXIS 91403 (C.D. Cal. Mar. 10,
  2015).......................................................... 23

23

24

*Whitserve, LLC v. Computer Packages, Inc.,*
  694 F.3d 10 Fed. Cir. 2012) .......................................................... 24-25

25

26

*Yufa v. TSI Inc.,*
  No. 12-cv-1614-FMO, 2015 U.S. Dist. LEXIS 106301 (C.D. Cal. Aug.
  12, 2015).......................................................... 3

27

28

1

**Statutes and Other Authorities**

35 U.S.C. § 282 ...............................................................................................8, 9

35 U.S.C. § 285 ...............................................................................................1, 2

Fed. R. Civ. P. 6 ..............................................................................................1, 2

Local Rule 7-12 ....................................................................................................2

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## I.     **INTRODUCTION**

Plaintiff ATEN International Co., Ltd. ("ATEN") opposes Defendants Uniclass Technology Co., Ltd. ("Uniclass"), Electronic Technology Co., Ltd. of Dongguan Uniclass, Airlink 101, Phoebe Micro Inc., Broadtech International Co., Ltd. d/b/a Linkskey, Black Box Corp., and Black Box Corp. of Pennsylvania (collectively, "Defendants") "corrected" motion for exceptional case determination under 35 U.S.C. § 285 (Dkt. 479) and "corrected" memorandum in support thereof (Dkt. 479-1).

Defendants' motion should be denied because it was untimely filed after the Court-ordered January 15, 2018 deadline. Dkt. 471. If Defendants' motion is considered, it should be denied on substantive grounds because Defendants failed to show that this case is exceptional under 35 U.S.C. § 285 and governing case law.

## II.    **ARGUMENT**

### A.     **Defendants' Motion Should Be Denied Because It Is Untimely**

Defendants' filing deadline for the present motion was set by a stipulated Court Order:  "Defendants have until January 15, 2018 to file their Motion." Dkt. 471 at 2. In contravention of this deadline, Defendants filed an initial version of their motion on Tuesday, January 16. Dkt. 474. The next day, in response to a Notice of Deficiencies (Dkt. 478), Defendants filed second, "corrected" versions of their motion and accompanying papers (Dkt. 479). Defendants offered no reason to justify their untimeliness, nor made any attempt to establish good cause that might otherwise excuse their unwarranted delay.

To the extent that Defendants argue that their lateness is excused by FRCP 6(a) because January 15 was a legal holiday, that argument would be unavailing. First, the parties specifically negotiated and agreed-to the January 15 deadline (nearly a 3-week extension of the original deadline) and filed a stipulation on December 22 formally requesting this extension. Dkt. 470. The parties' stipulated date and the Court's Order setting it (Dkt. 471) should not be treated as if they have no meaning.

Second, FRCP 6(a) only applies in computing *time periods*. FRCP 6(a)(1) states:

"(1) Period Stated in Days or a Longer Unit. When the period is stated in days or a longer unit of time: . . . (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Here, no "time period" is at issue: Defendants' deadline was set at a specific date (January 15, 2018) not at the end of a time period (e.g., 30 days from the original deadline). Thus, FRCP 6(a) does not apply.

Defendants' attempt to circumvent the deadline set by Order should be rejected. Under Local Rule 7-12, "[t]he Court may decline to consider any memorandum or other document not filed within the deadline set by order." ATEN respectfully requests that the Court exercise its discretion and deny Defendants' motion in full.

Moreover, without any explanation, Defendants deceptively included new exhibits as part of their "corrected" filing (Dkt. 479-4), which differ from the originally late-filed exhibits (Dkt. 476). Dkt. 479-4 should be stricken for this additional reason.

### B.   **<u>Defendants' Motion Should Also Be Denied on Substantive Grounds</u>**

To the extent the Court considers Defendants' motion despite its untimeliness, it should be denied on substantive grounds because Defendants failed to show, by a preponderance of the evidence, that this case is exceptional.

#### 1.   <u>Legal Standards</u>

In patent-infringement disputes, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In this context, "exceptional" retains its ordinary meaning of "uncommon," "rare," or "not ordinary." *Octane Fitness*, 134 S. Ct. at 1756. Accordingly, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*.

District courts determine whether a case is "exceptional" on a case-by-case basis, "considering the totality of circumstances." *Id*. 1756. Fees may be awarded where "a party's unreasonable conduct—while not necessarily independently

sanctionable—is nonetheless" exceptional. *Id*. at 1757. "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id*. A party must prove its entitlement to fees by a preponderance of the evidence. *Id*. at 1758.

In determining whether a claim is exceptionally meritless, courts analyze the "substantive strength of the party's litigating position . . . not the correctness or eventual success of that position." *SFA Sys. v. Newegg, Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (holding that a party's "position on issues of law ultimately need not be correct" for such position to "be found reasonable"). "[W]here a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims." *Enovsys LLC v. AT&T Mobility LLC*, No. 11-cv-5210-SS, 2016 U.S. Dist. LEXIS 87814, at *22 (Feb. 16, 2016) (citations omitted). Further, "[t[he Federal Circuit has noted that 'a district court may declare a case exceptional based on unreasonable and vexatious litigation tactics, even where it finds the legal theories advanced not objectively baseless.'" *Id*. at *12.

## 2. Defendants Failed to Show that ATEN "Did Not Conduct an Adequate Pre-Filing Investigation"

Attempting to recover fees for the entire case dating back to its inception, Defendants' first category of arguments (Mem. § III.B.a) attempt to show that ATEN's pre-filing inquiry was inadequate. Defendants failed to make this showing.

ATEN does not dispute that, in determining exceptionality, "[o]ne factor is the adequacy of plaintiff's pre-filing investigation." *Yufa v. TSI Inc.*, No. 12-cv-1614-FMO, 2015 U.S. Dist. LEXIS 106301, at *6 (C.D. Cal. Aug. 12, 2015). But although Defendants quote the Federal Circuit's language in *Q-Pharma* that "the key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis," Defendants omit the opinion's next sentence: "***And an infringement analysis can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter***." *Q-Pharma,*

*Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004) (emphasis added).

ATEN conducted a good-faith pre-filing investigation and filed this lawsuit <u>after</u> Uniclass breached a license agreement involving some of the asserted patents. Tr. Ex. 5. That license agreement arose from the parties' extensive discussions regarding Uniclass' alleged infringing products. Only after Uniclass' breach did ATEN bring this lawsuit upon completing a good-faith comparison of all its asserted claims against Uniclass' products. Thus, ATEN's pre-filing infringement analysis exceeded the standard set forth in *Q-Pharma* and, accordingly, ATEN's pre-filing inquiry was adequate and does not support a finding of exceptionality.

Defendants' seven arguments to the contrary, each addressed below, are unavailing. These arguments fail, individually and collectively, to show that ATEN's pre-filing inquiry was inadequate.[1] To the extent they implicate ATEN's actions that occurred during the case, they also fail to support an exceptionality finding.

### a.    <u>ATEN's Use of Representative Claim Charts</u>

Defendants first argue that ATEN's production of claim charts covering five representative accused products, where ATEN accused over 125 products in its Original Infringement Contentions, demonstrates an inadequate pre-filing inquiry. Mem. at 3-4. Defendants' position appears to be that had ATEN's pre-filing investigation been adequate, ATEN would have charted each of the accused products in its original contentions.

But Defendants cite no authority in support of this position. And using representative claim charts is common in patent litigation and is particularly appropriate where products can be grouped and are complex, such as here. Moreover, in holding that ATEN "would not necessarily be limited to the five accused products

---

[1] To the extent any of Defendants' seven arguments in the "pre-filing investigation" category implicate ATEN's actions that occurred while the case was pending, they likewise fail to support an exceptionality finding as described below.

that it charted in its Original Contentions," this Court stated: "The Standing Patent Rules [S.P.R.] ***do not require a claim chart for every accused product***. For contention purposes, a plaintiff need only provide enough information to permit a reasonable inference that all accused products infringe." Dkt. 345 at 5-6 (emphasis added) (citing *Tech. Properties Ltd. LLC v. Canon Inc.*, Case No. 14-cv-3640-CW, 2015 WL 5118687, at *3 (N.D. Cal. Aug. 31, 2015)).

The Court further held: "ATEN can rely on representative products to meet its obligations under S.P.R. 2.1 and 4.1; but it must articulate how the accused products share the same, or substantially the same, infringing qualities with any other product or with the "representative" product." *Id*. at 6. ATEN made such an articulation. For example, its original contentions listed, for each patent, additional products described as materially similar for purposes of infringement. *See, e.g.*, Dkt. 253-1 at Ex. A. The contentions also noted that the representative products and the additional products "meet all of the claim limitations in the same or similar way" and "may differ in ways inconsequential to the claims," and provided examples of such inconsequential differences. *See, e.g.*, *id*., Ex. B at 1.

Further, assuming Defendants indeed suffered the prejudice they now claim resulted from ATEN's representative charts and alleged delay in providing updates, Defendants could have sought Court intervention to compel the production of additional information. Defendants never took that step. Accordingly, ATEN's use of representative claim charts is not unreasonable, especially in light of Defendants' complacency, and does not support an exceptionality finding on the grounds of an inadequate pre-filing inquiry or otherwise. *Implicit Networks, Inc. v. Hewlett-Packard Co.*, No. 3-10-cv-03746, 2011 U.S. Dist. LEXIS 100283, at *5 (N.D. Cal. Sept. 7, 2011) (approving a claim chart containing categories of products).

### b.   <u>Dr. Lavian's Alleged "Admissions" at Trial</u>

Next, Defendants point to certain alleged "admissions" at trial by ATEN's second technical expert, Dr. Lavian, as evidence of an inadequate pre-filing inquiry.

Mem. at 4-5. This argument fails at the outset because, as Defendants note in their motion, Dr. Lavian was employed by ATEN only after the death of its initial expert, Dr. Narad. *See id.* at 13, 18. As such, Dr. Lavian was not involved in ATEN's pre-filing inquiry and his statements about his "personal use" of the accused products is thus irrelevant to whether the inquiry was adequate.[2]

Defendants also note in this "pre-filing inquiry" section that ATEN's alleged failure, through the course of during discovery, "to purchase and test . . . many [of the] products accused of infringement" supports an exceptionality finding. *Id.* at 5. But Defendants cite no authority requiring examination of the actual products to prove infringement, especially here where ATEN examined the products' source code, schematics, and manuals. Thus, Defendants' conclusion that such a failure to test every accused product "weighs in favor of a finding that the case is exceptional" is unsupported attorney argument and should be given no weight. *Id.* at 5.

c.     **The Large Proportion of Accused Products and Asserted Claims that Were Dropped or Dismissed**

Defendants argue that ATEN's allegedly inadequate pre-filing inquiry resulted in ATEN asserting "unfounded allegations" concerning various accused products that necessitated "extensive motion practice" to eliminate from the case. Mem. at 5.

The weaknesses of Defendants' argument are exposed by the Court's Order of March 13, 2017. Dkt. 345. That Order granted-in-part Defendants' motion to strike ATEN's final infringement contentions disclosed through its expert report. Dkt. 252. As a result, the Order was responsible for eliminating the vast majority of the "[o]ver 70% of the [o]riginally [a]ccused [p]roducts and [c]laims [d]ropped or [d]ismissed" from this case. Mem. at 5.

Importantly, however, the Court struck only the portions of ATEN's final

---

[2] Defendants' conclusory allegation that Dr. Lavian's trial statements also show a "lack of . . . diligence during discovery" fails for the reasons set forth in § B.4.b, *infra*.

infringement contentions that were untimely.[3] Dkt. 345 at 6. Thus, the Order made no finding as to whether ATEN's infringement theories reflected in the final contentions were unfounded or in any way meritless. *See id*. Likewise, the two Orders cited by Defendants (Dkts. 157, 422) regarding stipulated notices of dismissal concerning the '112 and '275 patents also made no finding as to whether ATEN's infringement theories concerning those patents were unfounded or meritless.[4] Quite simply, this Court never ruled on the merits of these dismissed claims. Ironically, Uniclass' bare assertion that the theories were "unfounded" is, itself, unfounded.

Because Defendants offer no other evidence to support a finding that the large proportion of ATEN's allegations that were dropped or dismissed from the case were "unfounded" or "exceptionally meritless," Defendants failed to meet their burden of showing that ATEN's allegations support an exceptionality finding on the grounds of an inadequate pre-filing inquiry or otherwise.

d.   **ATEN's Assertion of Claim 45 of the '275 Patent**

Defendants argue that claim 45 of the '275 patent was erroneously issued during reexamination, that this error would have been revealed by an adequate pre-filing inquiry, and that ATEN's assertion of claim 45 was therefore meritless. Mem. at 5-6.

Decisions by the PTO are presumed accurate. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 97 (2011) (noting "the basic proposition that a government agency such

_____

[3] As set forth in ATEN's opposition to Defendants' motion to strike (Dkt. 298), ATEN presented new infringement theories and accused products in its final infringement contentions based on the good-faith belief held by ATEN's then-counsel that they had an email agreement with Defendants' counsel to include additional theories and products in ATEN's final contentions, particularly given that Defendants allowed the ongoing, extensive discovery and source code review of these products.

[4] Indeed, ATEN agreed to dismiss its claims regarding the '112 and '275 patents after the Court entered its claim-construction ruling, evidencing ATEN's good-faith efforts to streamline the case and avoid any semblance of pressing potentially frivolous or unreasonable claims—factors that weigh *against* a finding of exceptionality.

as the [PTO] was presumed to do its job") (citation omitted). And "[e]ach claim of a patent . . . shall be presumed valid." 35 U.S.C. § 282(a). It was therefore reasonable for ATEN to rely on the PTO's decision and make the good-faith assertion that claim 45 is infringed by the accused products. Accordingly, ATEN's claim was not "exceptionally meritless" and fails to support a finding of exceptionality. *Enovsys*, 2016 U.S. Dist. LEXIS 87814, at *22 ("[W]here a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims.").

Further, as the record shows, upon being on notice of Defendants' argument that claim 45 was errantly issued, ATEN undertook an investigation to determine whether Defendants' argument was valid. Dkt. 111-5 at 1. Following this investigation, ATEN stipulated to dismissing the '275 patent. Dkt. 155. Although dismissal did not occur until 4 months after Defendants first notified ATEN of their issue with claim 45, this does not constitute an unreasonable delay given the size of the case and the time required to conduct a thorough investigation. Rather, it again demonstrates ATEN's good-faith efforts to reasonably streamline the case where appropriate.

Defendants also accuse ATEN of having made a "false representation to [a] Taiwanese Court as to why the '275 Patent was dismissed" and allege—without providing any factual evidence—that ATEN's representation "added to the prejudice" to Defendants. Mem. at 6. But based on Defendants' cited portions of the transcript, it is unclear whether this representation was indeed false. Also, the cited portions fail to show that ATEN intended to mislead the Taiwanese court to Defendants' detriment. Thus, ATEN's single representation in an entirely separate foreign court proceeding should not weigh in favor of an exceptionality determination here; nor did Defendants cite any case law to support their position.

In addition, Defendants seem to propose that asserting a valid patent claim that may have been issued erroneously renders inadequate a plaintiff's entire pre-filing inquiry. *Id*. at 5-6. Again, Defendants cite no case law in support of such a proposition.

Thus, ATEN's assertion of claim 45 does not support an exceptionality finding on the grounds of an inadequate pre-filing inquiry or otherwise.

e.  **The '141 Patent's Validity in light of the CS1762 Product**

Defendants next argue that ATEN's assertion of the '141 patent "underscores ATEN's insufficient pre-filing investigation and exceptionality," given the jury's finding that the '141 patent is anticipated by ATEN's CS1762 product. Mem. at 7.

As an initial matter, ATEN's assertion of the '141 patent, given the jury's verdict that it is invalid, does not inexorably lead to an exceptionality determination. "[F]ees are not awarded solely because one party's position did not prevail." *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015).

In addition, patents are presumed valid. 35 U.S.C. § 282. Further, ATEN's Rule 50(b) motion (Dkt. 462) and reply brief (Dkt. 467) set forth numerous, good-faith reasons why ATEN continued to assert the '141 patent despite Defendants' position that it is anticipated by the CS1762 product. For example, ATEN had good-faith reasons to believe that the record lacked evidence showing that the CS1762 device and manual predated the '141 patent's critical date. *See, e.g.*, Dkt. 467 at 5-6. For each of these reasons, ATEN's assertion of the '141 patent was not "exceptionally meritless" and supports neither an exceptionality finding nor a finding that ATEN's pre-filing inquiry was inadequate. *Enovsys*, 2016 U.S. Dist. LEXIS 87814, at *22.

f.  **ATEN's Prima T8 Infringement Analysis**

Next, Defendants allege an inadequate pre-filing inquiry and exceptionality determination based on ATEN's infringement analysis concerning the Prima T8 product.[5] Mem. at 7-8. Specifically, Defendants allege that ATEN's analysis of the

---

[5] In this section's initial sentence, in addition to the Prima T8 product, Defendants also refer to the Prima T4 and T16 products. Mem. at 7. But Defendants make no further mention of the T4 and T16 products, nor present any evidence to support a finding that ATEN's analysis of those products demonstrates an inadequate pre-filing inquiry or an exceptionality determination. *See id.* at 7-8. Thus, Defendants failed to meet their

Prima T8 product was errantly based on the Prima 8 product, which is not accused in the case. Defendants are incorrect.

ATEN's infringement analysis of the Prima T8 product never wavered; from the beginning, it was based on analyses of the Prima T8 product and Defendants' documents relating to this product. For example, all the evidentiary support relied on by ATEN at trial referred to the Prima T8 (not the Prima 8) product. Tr. Exs. 269, 286, 337, 338, 341. Also, the product Dr. Lavian analyzed was a Prima T8, as confirmed by the Prima T8 product manual and other documentation, regardless of whether the product was originally identified incorrectly as a Prima 8. *See id.*

Defendants' belief that a "conflation" occurred with the Prima T8 and Prima 8 products was borne not from ATEN's litigation tactics, but from Defendants' own mislabeling of the products in their documents. Tr. (9/26/17) at 94:9-13 (Uniclass' President Alex Kuan testified that "we put down the wrong data" in the report Uniclass provided to ATEN). And, it was reasonable for ATEN to rely on Defendants' own documents produced during discovery. Moreover, Prima and Prime T* products share the same source code. Tr. (9/22/17 v.1) at 52:10-17. Accordingly, ATEN's analysis of the Prima T8 product does not support an exceptionality finding.

Lastly, in the final paragraph of their section (Mem. at 8), Defendants also argue for exceptionality based on ATEN's "attempt[] to accuse the Linkskey equivalents of the Prima switches . . . for the first time in its Proposed Jury Instructions." Defendants later dedicated a full section of its memorandum to an expanded version of this same argument. *Id.* at 19-20. ATEN addresses this argument in § II.B.5.a, *infra*.

g. <u>**Defendants' Sales of the Prima T\* Products**</u>

Defendants also find fault in ATEN's accusations against the Prima T* products because Defendants contended that the products were never sold in the U.S. But

---

burden of showing, by a preponderance of the evidence, that this case is exceptional on these grounds, whether based on an inadequate pre-filing inquiry or otherwise.

Defendants' contention was undermined by their <u>own</u> documents that are evidence of record. For example, Defendants' documents explicitly refer to U.S. sales of the Prima T* products. Tr. Ex. 1951 at 1 (shipping to U.S. ports), 14 (rows 123-125 listing sales of Prima T* products). ATEN thus had good-faith reasons, supported by the record, to pursue its claims against these products. Accordingly, ATEN's claims were not "exceptionally meritless" and do not support a finding of exceptionality. *Enovsys*, 2016 U.S. Dist. LEXIS 87814, at *22.

### 3.   <u>Defendants Failed to Show that ATEN "Unnecessarily Increased the Costs of Claim Construction"</u>

Defendants' second category of arguments (Mem. § III.B.b) relates to whether ATEN litigated the case in an unreasonable manner with respect to claim construction. ATEN's actions were not unreasonable.

### a.   <u>ATEN's Alleged Forum Shopping</u>

Defendants first allege that ATEN unreasonably forum-shopped when it filed its Complaint in the Eastern District of Texas, which caused Defendants to incur fees to move the case to this Court. Mem. at 9-10. Defendants imply that ATEN filed in the E.D. Texas in order to obtain a favorable claim construction. *Id*. However, Defendants admit that reasonable considerations exist for a plaintiff to file in the E.D. Texas, such as the court's "accelerated docket." *Id*. at 10.

Further, as described in ATEN's motion *in limine* regarding reference to forum shopping—which was granted by the Court (Dkt. 399 at 5)—ATEN was well within its rights to file in the E.D. Texas and there is no prohibition on plaintiffs bringing suit in any appropriate jurisdiction where the law permits. *See* Dkt. 311. That this case was later transferred to this Court because it is a "more convenient forum" does not change the reasonableness of the original filing. Dkt. 94 at 3.

In addition, Defendants' reliance on *Large Audience Display* is misplaced. Mem. at 10. There, the Court's "litigation gamesmanship" characterization referred not to a late assignment of several asserted patents (which occurred here), but rather to the

plaintiff's formation a mere two days before the complaint was filed. *Large Audience Display Sys., LLC v. Tennman Prods., LLC*, No. 11-cv-03398-R, 2017 U.S. Dist. LEXIS 62617, at *4 (C.D. Cal. Apr. 10, 2017) (concluding: "These facts, among others, cause the Court to find that Plaintiff was formed in order to defeat a change of venue and keep the case in the Eastern District of Texas."). Here, in contrast, ATEN was formed more than two decades ago in Taiwan, not days before the E.D. Texas Complaint was filed. Thus, *Large Audience Display* is inapposite here.

Accordingly, ATEN's initial filing in E.D. Texas should not weigh in favor of finding exceptionality.

b.   **Claim Construction Briefing in Texas**

Next, Defendants argue that ATEN unreasonably refused to withdraw its opening claim construction brief (Dkt. 93) after the E.D. Texas entered an Order transferring the case to this Court (Dkt. 94). Mem. at 10-11. But Defendants ignore the fact that the E.D. Texas' Amended Docket Control Order (Dkt. 88), which set ATEN's deadline to file its opening claim construction brief, was still in effect while the transfer was pending; it was not vacated by the Order transferring the case.[6] Thus, if ATEN withdrew its brief, it would have been in non-compliance with a still-valid Order signed by a federal judge.

Ideally, the parties would have jointly moved to suspend the Amended Docket Control Order's deadlines, but to the undersigned's knowledge, neither side made that proposal. In any event, given that withdrawal of ATEN's brief would have resulted in non-compliance with a Court Order, ATEN's refusal to withdraw was reasonable.

---

[6] Had the Order transferring the case vacated the deadlines in the Amended Docket Control Order, then Defendants would have had no reason to request ATEN's withdrawal of its opening brief, nor would they have felt "required to prepare their claim construction brief for 26 terms permitted in Texas." Mem. at 11.

c.    **ATEN's Alleged Attempt to Relitigate a Claim Term**

It was also not unreasonable for ATEN to seek a construction of the "body" term of the '112 patent. Mem. at 11-12. Defendants point to the fact that the term was previously construed by this Court in ATEN's *Emine* litigation, and that this Court adopted the same construction here. *Id.* at 11 (citing *ATEN v. Emine Tech Co., Ltd*, No. 09-cv-0943-AG (C.D. Cal. 2009), Dkt. 274, 286). But the Court's claim-construction order in the *Emine* litigation was vacated after the parties settled. Thus, ATEN needed to raise the same arguments here in order to preserve its right to appeal. Equally unavailing is Defendants' reference to a prior construction of the term in an ITC investigation. Dkt. 194-3. It is black letter law that ITC constructions are not binding on district courts. *Texas Instruments v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996). As such, ATEN's request to construe the '112 patent's "body" term was not unreasonable.

**4.**    **Defendants Failed to Show that ATEN's "Changes in Counsel and Infringement Positions Drastically Increased the Costs of Discovery"**

Defendants' third category of arguments (Mem. § III.B.c) concerns whether ATEN litigated the case in an unreasonable manner and, as a result, drastically increased discovery costs. ATEN's actions were not unreasonable.

a.    **ATEN's Changes of Counsel**

Defendants complain that ATEN's changes of counsel during the case drastically increased their discovery costs because it resulted in losses of "institutional memory of interim agreements and history of the case," which forced Defendants to "re-educate" new counsel and extend deadlines, among other things. Mem. at 12-14.

Defendants overstate the extent of ATEN's counsel changes. For example, several firms retained by ATEN acted as either co-counsel or local counsel. And while multiple changes of lead counsel occurred, each change was justified and not made to prejudice Defendants. Moreover, they were all made within a 7-month span except for

the retaining of the undersigned shortly before trial. Also, three firms were involved simply because the case followed one lead attorney—Grace Pan—as she moved from Orrick to Greenberg Traurig to Holland & Knight. The case then moved from Holland & Knight to the Devlin law firm due to budgetary concerns, and finally to the undersigned after the Court's unfavorable decision on Defendants' motion to strike final infringement contentions (Dkt. 345). ATEN's counsel changes were not the "turnstile approach to representation" as alleged by Defendants (Mem. at 14), and each change was made for a legitimate, good-faith reason.

Further, Defendants overstate the impact of these changes. Counsel aimed to pass on its institutional knowledge as much as possible to avoid duplicative work. Defendants assert that their discovery costs "drastically increased" as a result of these counsel changes—e.g., by requiring Defendants' counsel to "re-educate" and "get up to speed" the new counsel—yet provided no specific, concrete evidence to support this assertion. For example, ATEN questions the extent to which a simple reminder of a prior agreement or forwarding of an email memorializing prior correspondence would "drastically increase" Defendants' costs.[7]

Defendants thus failed to meet its burden of showing that ATEN's changes of counsel were unreasonable or done in bad faith. Accordingly, ATEN's changes of counsel do not support an exceptionality finding.

b.   **ATEN's Source Code Review**

Defendants next claim exceptionality based on ATEN's source code review. Mem. at 14-15. Defendants' claim is meritless.

---

[7] Defendants also allege that the changes of counsel resulted in the "reinvent[ion]" of ATEN's "infringement positions and representative product groupings." Mem. at 12. In support of this allegation, Defendants refer to the parties' pre-trial motions practice regarding product grouping, which occurred after the undersigned was retained. *Id*. at 13-14. Defendants later dedicated a section of its memorandum to this same argument. *Id*. at 19-20. ATEN addresses this argument in § II.B.5.a, *infra*.

1    After ATEN's initial source code review in March 2015, Defendants later
2    "agreed in good faith to allow a limited [second] inspection to assist ATEN's new
3    technical expert" who was retained after ATEN's first technical expert died. *Id*. at 14.
4    Defendants appear to regret this decision. But they could have refused ATEN's request
5    for a second inspection after fact discovery closed and forced ATEN to seek Court
6    intervention. They also could have denied ATEN's offer to pay Defendants' costs
7    incurred for this second inspection, but they accepted payment. Far from
8    "demonstrating the inequity" of ATEN's request for another inspection (*id*. at 15.),
9    ATEN's payment of Defendants' costs, in truth, was an effort to advance this case in
10   good faith *after its first technical expert died*. In short, Defendants fail to show that
11   ATEN's second inspection of source code—voluntarily offered by Uniclass—was an
12   unreasonable litigation tactic, particularly given the death of ATEN's technical expert.

13       Defendants then claim that *all* of ATEN's source code review was unnecessary
14   and increased Defendants' discovery costs because of a "shocking revelation" at trial
15   made by ATEN's expert, Dr. Lavian. Mem. at 15. But Defendants take Dr. Lavian's
16   statement—"I don't need to look at source code at all to make my opinion" (Tr. 9/20
17   Vol.2 at 71:23-24)—completely out of context. Defendants ignore Dr. Lavian's
18   testimony that he had access to and reviewed multiple sources of evidence that showed
19   infringement of the accused products, including data specifications and product
20   manuals. Tr. 9/20 Vol.2 at 71:24-72:11. Defendants also ignore Dr. Lavian's
21   statements that review of a product's source code ***was necessary*** in most instances to
22   confirm infringement, and that it may be improper to rely solely on documentary
23   evidence. *Id*.

24       Specifically, Dr. Lavian explained:

25       So you can take a look at different ways to look at infringement. I
26       looked on many different ways. You can take a look at specifications and
27       make your decision. You can look at manuals. You can look at how it
28       works. You can actually test it and see how it does. Many different place.

1    But the value of source code, it gives another way to understand,

2    okay, I think I understand how it works. Let me verify. Let me see that it's

3    the same.

4    And my conclusion, that all of this different evidence from different

5    point of view, all of them told me exactly the same story.

6  *Id.*

7    Neither Defendants' mischaracterization of Dr. Lavian's testimony, nor their

8  voluntary granting to ATEN of a second inspection renders unreasonable any aspect of

9  ATEN's source code review. As such, ATEN's review does not support an

10 exceptionality finding here.

11          c.    **Two Instances Where ATEN Refused to Limit the Case's**

12                **Scope**

13   Next, Defendants claim that ATEN's refusal to limit the case's scope in two

14 instances—(i) after the Court entered its claim-construction order; and (ii) after ATEN

15 learned new information during discovery—unreasonably increased Defendants'

16 discovery costs. Mem. at 15-16. Again, Defendants' claim is meritless.

17   Defendants' first argument centers on the fact that the Court's claim-

18 construction order "adopt[ed] the same claim constructions that resulted in a walk-

19 away settlement in the Emine litigation with no monetary payment by the Emine

20 defendants." *Id.* at 15. And that ATEN acted unreasonably when it "did nothing to

21 limit the scope" of this case because the products in both cases are "similar" from

22 Defendants' perspective. *Id.* But as Defendants admit, the accused products at issue

23 here are <u>different</u> than the ones at issue in the *Emine* litigation. *Id.* Indeed, even after

24 the Court's Order, ATEN had a good-faith belief that *Defendants' products* were

25 infringing, as illustrated in ATEN's final infringement contentions. Defendants

26 identify no compelling reason for ATEN to voluntarily narrow the scope of this case in

27 light of the Court's Order, nor do they proffer any evidence showing that ATEN had

28 an obligation to do so. Accordingly, ATEN's decision not to limit the case's scope was

not unreasonable.

Defendants' second argument concerns ATEN's decision not to narrow the case's scope by amending its Original Infringement Contentions as it learned of new information during discovery, but instead waiting until serving its Final Infringement Contentions to make any amendments. *Id*. This argument is subsumed by a separate section of Defendants' memorandum (*id*. at 16-17), which ATEN addresses in § II.B.4.d, *infra*. For the reasons set forth *infra*, ATEN's decision not to limit the case's scope as demanded here by Defendants was not unreasonable.

### d. **ATEN's Final Infringement Contentions**

Defendants argue that ATEN's alleged violations of various S.P.R.'s constitute unreasonable litigation behavior that prejudiced Defendants, and weigh in favor of an of exceptionality finding. Mem. at 16-17.  Again, Defendants' claim is meritless.

All three of the alleged S.P.R. violations identified by Defendants stem from a misunderstanding between the parties' counsel. As set forth in ATEN's opposition to Defendants' motion to strike:

> In July, 2016, as the parties were discussing a number of discovery issues
> and the potential use of "representative products" to streamline
> presentation of the issues, they agreed to forego supplemental contentions
> in advance of expert reports. Instead ATEN would serve its expert report
> in the normal course and include any updated information in that. In
> return, Uniclass would address any changes or additions to the
> infringement theories in its own expert reports, and ATEN would not
> oppose any such supplementation Uniclass agreed to this process in
> writing.

Dkt. 298 at 4. ATEN supported the above statements with a declaration from counsel and documentation of counsels' email exchange. *See, e.g.*, Dkt. 298-1.

ATEN thus presented new infringement theories and accused products in its final infringement contentions—admittedly served late—based on a reasonable, good-

faith belief held by ATEN's then-counsel that they had an agreement with Defendants' counsel not to provide formal contentions before expert reports. Dkt 298 at 10. Supporting the reasonableness of this belief is Defendants' subsequent course of conduct: Defendants allowed extensive discovery, including source code review, of the additional products in the time period between the email agreement and ATEN's service of its final infringement contentions.

Although the Court found that counsels' email exchange did "not constitute a waiver or estoppel to Uniclass filing a motion to strike ATEN's new infringement positions," the Court did not find that ATEN's counsel's position was unreasonable. *See* Dkt. 345 at 4. Because Defendants failed to show that ATEN's good-faith non-compliance with the S.P.R.'s was unreasonable, it does not support an exceptionality finding.

e.   **ATEN's Assertions Against the LKV-248 Product**

Defendants allege that ATEN unreasonably delayed until December 2016 before withdrawing its assertion that the LKV-248 product infringed the '141 patent after being on notice of Defendants' belief that the LKV-248 product was sold before the '141 patent's critical date. In essence, Defendants are arguing that ATEN's assertion was an "exceptionally meritless claim[] . . . [that] warrant[s] a fee award." *Octane Fitness*, 134 S. Ct. at 1757. But in determining whether a claim is exceptionally meritless, courts analyze the "substantive strength of the party's litigating position . . . not the correctness or eventual success of that position." *SFA Sys.*, 793 F.3d at 1348.

Despite being on notice of the alleged prior sale of the LKV-248 product, ATEN had legitimate, good-faith concerns regarding the date of the product's firmware; that is, whether the source code in this firmware changed since the alleged prior sale of the LKV-248 product and whether the earlier firmware would have invalidated the '141 patent's asserted claims. These concerns were substantiated when Defendants and their expert did not even attempt to rely on the alleged prior sale of the LKV-248 product to invalidate the '141 patent at trial, as well as Defendants' decision not to call any

witness regarding the alleged prior sale of the LKV-248 product. Moreover, this Court denied Defendants' motion for summary judgment of invalidity of the '141 patent based on the prior sale of the LKV-248 product. Dkt. 362.

Given the lack of evidence regarding the firmware's date, it was reasonable for ATEN to delay in withdrawing its claim against the LKV-248 product until circumstances changed in December 2016. And, ATEN's withdrawal of its claim against the LKV-248 product was to narrow the issues at trial, not a concession that the alleged prior sale of the LKV-248 product would invalidate the '141 patent.

Therefore, ATEN's good-faith position is supported by the record and weighs heavily against a finding that ATEN's claim was "exceptionally meritless." *Enovsys*, 2016 U.S. Dist. LEXIS 87814, at *22.

      f.    **ATEN's Refusal to Vacate the Trial Date While Defendants' Motion to Strike the Final Infringement Contentions Was Pending**

Defendants assert that ATEN's decision not to join Defendants' request to vacate and reschedule the trial date (Dkt. 261) was an unreasonable litigation tactic. Mem. at 18. But as Defendants admit, the need to reschedule trial was premised on their belief that the Court would grant Defendants' motion to strike ATEN's final invalidity contentions (Dkt. 252). Mem. at 18. For the reasons set forth in ATEN's opposition to Defendants' motion to strike (Dkt. 298), it was reasonable for ATEN to believe that Defendants' motion to strike would be denied, thus obviating the need to vacate and reschedule the trial date. Further, as plaintiff in a case pending for years with injunctive relief at issue, ATEN's interest in this case reaching a decision on the merits without further delay was also reasonable. Thus, ATEN's decision not to join in Defendants' request to vacate the trial date does not weigh in favor of an exceptionality finding.

      g.    **ATEN's Technical Experts and the '287 Patent**

Defendants also complain of alleged "contradictory" positions taken by ATEN's

technical experts and assert that "ATEN's decision to take contrary infringement positions after claim construction and fact discovery is exceptional, and Defendants should not bear the costs incurred responding to such behavior." Mem. at 18-19.

ATEN's experts' positions with respect to infringement of the '287 patent are not contradictory. Specifically, Dr. Narad's position was that "[w]hen *synchronous switching* occurs, any connection between a switched peripheral device and a host computer is *necessarily changed <u>or</u> interrupted*." Dkt. 93-1 at 5 (emphases added). By Dr. Narad's use of the disjunctive "or," he made clear that any connection would either be changed *or* interrupted during synchronous switching.

After Dr. Narad died, ATEN retained Dr. Lavian, who later posited that "[t]he accused instrumentalities have console devices that can be *switched* either *synchronously* or asynchronously with one peripheral device to the same computer system or to different computer systems, *without interruption* of the signal to the peripheral device." Dkt. 336-8 at 4 (emphases added). On its face, Dr. Lavian's position does not contradict Dr. Narad's because Dr. Narad's position covers the scenario where the connection is "changed" but not "interrupted," given his use of the disjunctive "or." Thus, Defendants' argument is baseless.

But even assuming that their positions are somehow contradictory, it can be reasonably attributed to the fact that Dr. Lavian's <u>independent</u> investigation of the accused products included an extensive review of source code. This source code review yielded additional information upon which Dr. Lavian based his infringement positions, and which may not have been available to Dr. Narad before his death. In any event, it was not unreasonable for ATEN to rely on its experts' positions while they were retained. This is underscored by the fact that Defendants neither alleged nor showed that Dr. Lavian's position was frivolous, and that Defendants' motion *in limine* to disqualify Dr. Lavian was rejected by the Court.

5.    **Defendants Failed to Show that ATEN's Litigation Behavior Was "Unreasonable" and "Required Additional Motion Practice in the Lead-Up to Trial"**

Defendants' fourth category of arguments (Mem. § III.B.d) relates to whether ATEN's manner of litigating during the pre-trial stage was unreasonable and whether its lost-profits claim was exceptionally meritless. Neither is true.

a.    **ATEN's Pre-Trial Product Groupings**

Defendants argue that ATEN's alleged attempt to expand its product groupings by listing five previously unlisted products—the Black Box KV7021A-K and KV07020A-K products and the Linkskey LKV-9304, LKV-9308, and LKV-9316 products—in its proposed jury instructions was an unreasonable litigation tactic that supports an exceptionality finding.

Defendants are incorrect. ATEN never sought to add *new products* to its product groupings, but rather *additional names* for the same products already listed. ATEN reasonably believed, in good-faith, that these were additional names for the same products used by the customers Black Box and Linkskey. Importantly, this belief is based on Defendants' own documents, which indicated that several of the already-listed products were offered for sale under different names by these customers. *See, e.g.*, Tr. Ex. 422 at ATEN-UNICLASS00054313 – 54314; *see also* Dkt. 424. And it was reasonable for ATEN to rely on Defendants' own documents kept in the normal course of business.

ATEN's attempt to include additional names for the same products already listed in its product groupings is not an unreasonable litigation tactic and, thus, does not weigh in favor of an exceptionality determination.

b.    **ATEN's Lost-Profits Claim**

Defendants next argue that they are entitled to recover a portion of their pre-trial fees because ATEN's lost-profits claim was "abnormally weak." Mem. at 20. Defendants are incorrect.

Although ATEN's lost-profits claim was ultimately unsuccessful, that alone does not warrant fees; what matters is the substantive strength of the claim—i.e., whether it was "exceptionally meritless." *Octane Fitness*, 134 S. Ct. at 1757; *SFA Sys.*, 793 F.3d at 1348. In its opposition to Defendants' motion for summary judgment on this issue (Dkt. 297), ATEN set forth numerous, good-faith arguments in favor of its reasonable positions concerning its lost-profits claim.

In support of Defendants' request for fees, they first point to the fact that ATEN's damages expert, Mr. Snell, lacked sufficient data to conduct a market-share analysis and instead based his opinion on a product "mapping" theory. Mem. at 20. But as described in ATEN's opposition, because no market-share data was available, Dr. Snell reasonably relied on data from ATEN's sales witness to form his lost-profits opinion in a reasonable manner, which ATEN relied on in good faith. Dkt. 297 at 1-2, 7-9; Dkt. 297-2, Ex. 1 at 21-22.

Defendants also point to Dr. Snell's "flaw[ed]" analysis regarding market competitors and non-infringing substitutes. Mem. at 20. But again, Dr. Snell's positions were reasonable and made in good faith. For example, regarding competitors, he explained in his expert report: "I have recognized that, while there is competition between ATEN and Uniclass, it might not exist across the entire lines of KVM switch products. As a result, I have employed a conservative approach to estimate the portion of accused sales that ATEN likely would have made but for the alleged infringement." Dkt. 297-2, Ex. 1 at 18. And as described in ATEN's motion, ATEN advanced good-faith arguments as to market competitors (Dkt. 297 at 8-9) and as to whether the products identified by Defendants were indeed non-infringing substitutes (*id*. at 9-12).

Nor did the Order granting Defendants' motion indicate that any of ATEN's arguments in opposition were not in good-faith. *See* Dkt. 363. Thus, ATEN's lost-profits claim was not "exceptionally meritless" and no fee award is warranted. *Octane Fitness*, 134 S. Ct. at 1757; *Enovsys*, 2016 U.S. Dist. LEXIS 87814, at *22.

6. **Defendants Failed to Show that ATEN's Litigation Behavior Was "Exceptional" and "Led to an Expensive and Disproportionate Trial"**

Defendants' fifth category of arguments (Mem. § III.B.e) relates to whether ATEN's manner of litigating during trial was unreasonable and whether its damages position was exceptionally meritless. Defendants' arguments are baseless.

a. **Proportionality of Trial Costs to Damages Requested**

Defendants argue that a fees award is warranted because ATEN proceeded with trial despite a disproportionality between costs and damages. Mem. at 21-23.

First, Defendants' contention that ATEN was motivated by an anti-competitive strategy is not well taken. In support, Defendants point to a single statement by ATEN's *counsel* that speculated that there may be "some animosity" between the parties. Even if true, *some* animosity between litigants embroiled in a years-long case is far from uncommon, especially considering that it was Uniclass who breached the prior patent license agreement (Tr. Ex. 5), forcing ATEN to file this lawsuit. And Defendants' "evidence" of alleged improper motivation is far different than the evidence presented in the only case they cite in support. In *Universal*, of record was a smoking-gun email from plaintiff's vice president of sales, stating: "We are going to get VERY aggressive on this quote. We are going to push URC's margin and price DOWN. That along with the current lawsuit should push them to the brink. This will be payback for Time Warner." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. 12-cv-00329-AG, 2015 U.S. Dist. LEXIS 91403, at *7-8 (C.D. Cal. Mar. 10, 2015). Thus, *Universal* is inapposite on this issue.

Second, ATEN's high costs—e.g., about $700,000 in fees incurred by its two experts—is not unreasonable in patent litigations where complex technology, over 100 accused products, and important injunctive relief (the parties are direct competitors in the OEM market) are at issue and where extensive source-code review was necessary. Defendants' also fail to mention ATEN's pre-trial attempt to streamline the issues by

offering to stipulate to dismiss certain claims without prejudice. Tr. (09/27/2017) at 80:23-81:5. This offer was unreasonably rejected by Defendants, who insisted that ATEN dismiss the claims *with* prejudice and enter into a *global* settlement that included products not at issue in this case—all in exchange for $50,000. Dkt 476-5.

Third, although the reasonable-royalty damages requested at trial were only about $678,000, ATEN was also seeking treble damages for willful infringement. This low amount is also explained by the Court's Orders shortly before trial that struck ATEN's final infringement contentions (Dkt. 345) and dismissed ATEN's lost-profits claim (Dkt. 363). If not for those Orders, ATEN's damages request would have been over $10 million with treble damages.

Unmotivated by ill intent, and the proportionality of costs-to-damages not of ATEN's making and reasonably explained given the issues in this case, Defendants failed to show that ATEN acted "unreasonable" in proceeding to trial.

b.   **ATEN's Damages Position**

Defendants next argue that they are entitled to recover a portion of their trial fees because ATEN advanced a meritless damages claim. Mem. at 23-24.

Defendants allege that the reasonable royalty position of ATEN's damages expert, Dr. Snell, was flawed because it "lacked even a basic *Georgia-Pacific* analysis." *Id*. at 23. They also point to Dr. Snell's statement at trial that "I'm not sure how to answer that" when asked by his counsel whether his "analysis of the Georgia Pacific factors [was] consistent with your conclusions in this case." Tr. (9/22/17 v.2) at 127:25-128:2. But when counsel rephrased the question, he responded: "Well, yes." *Id*. at 128:3-14. And he later explained his initial answer: "I guess the reason I answered that way was because of the way the question was asked." Tr. (9/26/17) at 43:12-14. Dr. Snell also testified that he did analyze the *Georgia-Pacific* factors in forming his opinion. *Id*. at 43:14-44:2. But such analysis is not even necessary: The law expressly does "not require that [expert] witnesses use any or all of the *Georgia–Pacific* factors when testifying about damages in patent cases." *Whitserve, LLC v. Computer*

*Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012). The Court also denied the same arguments Defendants raised in a Rule 50 motion at trial. Tr. (09/28/17) at 4:18-21.

Defendants then questioned the appropriateness of Dr. Snell's 7.5% royalty rate. Mem. at 24. But it is undisputed that ATEN and Uniclass ***actually agreed to a 7.5% royalty rate*** in 2009. Tr. Ex. 5. Thus, Dr. Snell's good-faith reliance on this rate was reasonable. And although Defendants note that the rate was temporarily decreased to 6.0%, the addendum setting this lower rate also identified additional consideration granted to ATEN. *Id*. It thus does not render Dr. Snell's position unreasonable.

Defendants thus failed to present sufficient evidence to show that ATEN's damages claim was "exceptionally meritless," and ignored the numerous, good-faith arguments of record that ATEN and Dr. Snell advanced in favor of their position.

c.    **The Customer Defendants**

In a last-ditch effort for fees, Defendants point to ATEN's decision to keep the customer defendants in the case for trial. Mem. at 24-25. But Defendants failed to show that ATEN's decision was "unreasonable." Notably, this Court denied Defendants' motion *in limine* on this issue. Dkt. 399 at 5 (denying Defendants' MIL 3 (Dkt. 369)). Defendants also admit that damages, albeit low, were at issue for these defendants. *Id*. at 25. Moreover, ATEN was seeking injunctive relief against these defendants. And ATEN's good-faith decision to minimize discovery costs incurred by these defendants by relying on Uniclass' sales documents should not be penalized. Lastly, as discussed in § II.B.5.a *supra*, ATEN's attempt to list *additional names* to its product groupings for the same products already listed was reasonable, and not done to "keep [certain] defendants in the case," as Defendants allege. Mem. at 24. Thus, no fees are warranted.

## III.   **CONCLUSION**

For the above reasons, ATEN respectfully requests that the Court decline to consider and deny Defendants' motion for an exceptional case determination.

Dated:  January 28, 2018

Respectfully submitted,

/s/ *P. Andrew Riley*
Lei Mei (SBN 240104)
mei@meimark.com
P. Andrew Riley (Pro Hac Vice)
ariley@meimark.com
Larry Sandell (SBN 262186)
lsandell@meimark.com
Irene Chen (Pro Hac Vice)
ichen@meimark.com
MEI & MARK LLP
P.O. Box 65981
Washington, DC 20035-5981
Telephone: 888-860-5678
Facsimile: 888-706-117

Manni Li (SBN 273984)
mli@meimark.com
Mei & Mark LLP
433 North Camden Drive, Suite 400
Beverly Hills, CA 90210
Telephone: 888-860-5678 ext. 713
Facsimile: 310-564-2769

Attorneys for Plaintiff
ATEN INTERNATIONAL CO., LTD.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing **ATEN INTERNATIONAL CO.
LTD.'S OPPOSITION TO DEFENDANTS' MOTION FOR EXCEPTIONAL
CASE DETERMINATION UNDER 35 U.S.C. § 285** was filed electronically, and
pursuant to Civil L.R. 5-3.2, was served on all interested parties in this action (i.e.,
served to registered ECF recipients via ECF electronic service) on January 28, 2018.

/s/ *Lei Mei*
Lei Mei